14797

RUDD v. FAIRFOREST FINISHING CO. ET AL.

(200 S. E., 727)

*Messrs. Carlisle, Brown & Carlisle,* for appellant,

*Messrs. Wise & Whaley,* for respondents,

January 3, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The appellant, an employee of Fairforest Finishing Company, filed his claim for compensation with the South Carolina Industrial Commission alleging that he had suffered a compensable hernia on July 14, 1937, while in the course of his employment with this company. The compensation commissioner made an award in favor of the claimant. Upon appeal to the full commission the award was set aside, and the claim for compensation was denied. The judgment of the full commission was affirmed by the Court of Common Pleas.

The claim is based upon Section 7035-2, Subsection (r) of the South Carolina Workmen's Compensation Law (39 St. at Large, p. 1231, *et seq.*), which reads:

"In all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the

course of the employee's employment, it must be definitely proven to the satisfaction of the industrial commission:

"First. That there was an injury resulting in hernia or rupture.

"Second. That the hernia or rupture appeared suddenly.

"Third. That it was accompanied by pain.

"Fourth. That the hernia or rupture immediately followed an accident.

"Fifth. That the hernia or rupture did not exist prior to the accident for which compensation is claimed."

It will thus be noted that the Legislature has made hernia the subject of special provisions and exceptions under the Workmen's Compensation Act. The burden is on the claimant to definitely prove to the satisfaction of the Industrial Commission the accompanying circumstances and conditions prescribed by the statute. Therefore, in all claims for hernia alleged to have resulted from accidental injury sustained in the course of employment, it must be definitely proven that there was an injury resulting in hernia; that the hernia appeared suddenly; that the hernia or rupture immediately followed the accident; that it did not exist prior to the accident for which compensation is claimed, and that the accidental injury was accompanied by pain. A claimant cannot recover under the Act unless he has a finding in his favor on all of the above requirements.

It is a familiar formula that findings of fact by a board or commission on a claim under a Workmen's Compensation Act are conclusive; and the appellate Court will not review such findings except to determine whether there is any evidence to support the award. It may reverse an award if there is an absence of any evidence to support it, but it is not a trier of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the board, its findings are conclusive in the absence of fraud, and neither this Court

nor the Court of Common Pleas is at liberty to interfere with them. This is but an application to Workmen's Compensation cases of the fundamental principle universal in Courts of law, that whether there is any competent evidence is for the Court to determine, but whether the evidence is sufficient is a question for the jury; the function of the commission being in that respect that of a jury in actions of law. While the findings of fact by the Industrial Commission will be upheld if there is any evidence on which it can rest, it must be founded on evidence, and cannot rest on surmise, conjecture or speculation. *Philips v. Dixie Stores, Inc., et al.*, 186 S. C., 374, 195 S. E., 646; *Murdaugh v. Robert Lee Const. Co.*, 185 S. C., 497, 194 S. E., 447; *Spearman v. F. S. Royster Guano Co.*, 188 S. C., 393, 199 S. E., 530.

These governing principles find general concurrence in other jurisdictions. See Note in Ann. Cas., 1918-B, 647.

Compensation laws should be given a liberal construction in furtherance of the beneficent purpose for which they were enacted, and if possible, so as to avoid incongruous or harsh results. *Baltimore & Philadelphia Steamboat Company v. Norton*, 284 U. S., 408, 414, 52 S. Ct., 187, 189, 76 L. Ed., 366.

In our opinion, the legislative purpose evident in our Act is to restrict compensation for hernia to those cases where there is a relative and reasonably close coincidence between the accidental injury and the hernia, and where it is clear that no other agency intervened, as to time, place, or action, to cause the injury.

The words "suddenly" and "immediately" are elastic terms, admitting of much variety of definition, as held by the commission. And, as used in the Act, these words should not be construed as the equivalent of the word "instantaneous." Like similar absolute expressions, they are used here with less strictness than the literal meaning requires. For to give them their literal signification

in all cases, regardless of the attendant situations and circumstances, would often defeat meritorious claims upon purely technical grounds, and thus frustrate the purpose of the Act.

The facts in the case are undisputed. The appellant ██ had been in the employ of Fairforest Finishing Plant as dispenser in one of its dye rooms continuously from February, 1937, to July 14, 1937, the date he claims to have suffered his injury. The process of finishing cloth required the use of a chemical known as hydrosol, which came in metal drums containing 55 gallons, and weighing between 500 and 600 pounds. The appellant's duties included bringing the drum of hydrosol from a store room upstairs, inserting a spigot in the head of the drum, and placing the drum on a low wooden rack, from which the contents would be dispensed. When the drum became empty it was the appellant's duty to remove the empty drum from the rack and replace it with a full drum, using "main strength" for that purpose. He was so employed for five months before his injury, and experienced no difficulty in doing the heavy work.

On July 14, 1937, about 11 o'clock a. m., assisted by a fellow employee, appellant was engaged in lifting a full drum of hydrosol on to the wooden rack, when the spigot in the head of the drum became entangled with the framework of the rack, and the drum slipped, jerking the appellant, and throwing a heavy strain on him for two or three minutes. With the assistance of a third employee, the drum was finally, after about ten minutes, placed in position. The appellant continued working at lighter tasks for the remainder of that day, which did not involve the lifting of heavy weights. He says that he was not conscious of any pain during the struggle with the metal drum, but after the lifting was over he said he "felt a tired and let down sensation;" "felt a little tired, and that night was extra tired." "I could not say I felt any sharp pain or anything like that

outside of just what you might say a man would feel after struggling with a weight like that." He mentioned to one of his fellow employees after the metal drum had been fixed in position, that he "was plenty tired and exhausted." But he was sensible of no pain or physical discomfort in the hernial region at the time.

The next morning, July 15, when appellant got out of bed, he experienced a sharp pain, which continued that day and the following day, both of which days, however, he continued to work at light tasks. On Saturday, July 17, he consulted Dr. C. S. Finney, a physician, who diagnosed his trouble as inguinal hernia. On the following morning he consulted Dr. Lindsay, the company physician, who made the same diagnosis, and instructed him to quit work, which he did. Appellant testified that he had no hernia or evidence of hernia previous to this accidental injury.

The medical history of the appellant showed that he had been operated on in the hernial region at the age of seven years for an undescended testicle, and was discharged as cured. The evidence of the surgeon who performed this operation was to the effect that there was no indication of hernia at that time. Dr. Finney testified that the incision in the abdominal wall for the operation in question was at approximately the same place as for a hernia, and that he found a scar in that region on appellant. He said with reference to that operation that it might or might not have caused a weakness of the tissues in that area; that a conclusion on that point could not be definitely stated. He also testified that appellant's hernia might have existed for several years; that there was no way to determine from an examination when it had its inception or when the rupture occurred.

The Industrial Commission found that the hernia was congenital in origin and that it was caused by a pre-existing weakening of tissue. The appellant claims on this appeal that the evidence is not open to a reasonable inference that the hernia for which he claims compensation was congenital

in origin. With this contention of the appellant we must agree. It will be observed that the fifth provision of Subsection "r" provides that it must be shown that the hernia did not exist prior to the accident for which compensation is claimed. We can find no evidence in the record which would reasonably warrant a finding that the claimant suffered from hernia at any time prior to July 14, 1937. He himself testified that he had never had a hernia prior to that day, and the medical testimony relating to the operation he underwent at seven years of age shows that at that time there was no evidence whatever of hernia. The negative testimony of Dr. Finney on this point is too conjectural to base a conclusion upon it.

The appellant contends that if the commission was in error as to this, then this error of law controlled and affected its general conclusion that the other requisites of Section 2 (r), Code Supp., 1936, § 7035-2(r), were not sufficiently proved. In this position we are unable to concur.

The Industrial Commission found as a fact that the alleged traumatic hernia made its appearance at an undetermined date following the accident, and found as a fact that no pain was felt at the time of the accident. The burden was upon the appellant to definitely prove to the satisfaction of the Industrial Commission that the injury was accompanied by pain, as required by the statute. There is ample testimony in the record to support this finding. This being true, we need not consider whether the hernia appeared suddenly, or whether the hernia immediately followed the accident.

While we should give the Compensation Act a liberal construction, we are not justified in so construing it as to do violence to a specific requirement of the Act. The appellant repeatedly disclaimed that he felt pain at the time of the accident, nor did he experience any pain until the following morning. Under these facts we cannot say that the commission erred in finding that no pain was felt at the time of the accident. We are not warranted in ascribing to

the words "tired" and "exhausted" the common sense meaning of the word "pain."

The appellant argues that the language of the Act, ■ "That it was accompanied by pain," does not mean that pain must be coincident with the accidental injury, but that the appearance of the hernia must be accompanied by pain. As we construe the statute, however, the injury and the pain must be referable to a definite time, place, and circumstance, and, in accordance with the provisions of the Act, pain must accompany the accidental injury. Otherwise, how could the inception of the hernia be definitely fixed and accounted for. The office of this statutory requirement is to date the onset of the hernia. A requirement that pain accompany the rupture or protrusion would be of no effect in determining its cause, unless the rupture or hernia occurred instantaneously with the accidental injury. For if there is no pain indicative of an abdominal leison at the time of the accident, as was the case here, and such is not required to be established, then it might well result that the cause of the hernia would be left in the field of surmise and conjecture.

Nontechnical definitions of "pain," while varying in form of expression, all connote some degree of present distress or suffering, contradistinguished from normal fatigue. Webster's New International Dictionary & Encyclopedia, p. 4232; *Merriam v. Hamilton,* 64 Or., 476, 130 P., 406, 3 Words and Phrases, Second Series, p. 863; 5 Words and Phrases, Third Series, p. 801; 3 Words and Phrases, Fourth Series, p. 15; 46 C. J., p. 1169.

Under the evidence in this case bearing upon the ■ question of pain, we cannot say that the commission erred in finding that no pain accompanied the accident. We are not at liberty to extend by construction the meaning implicit in the language found in the Act in order to provide a more liberal rule of compensation than that which the Legislature has seen fit to adopt.

Judgment affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Baker concur.

Mr. Justice Carter did not participate on account of illness.