15246

BAKER v. GRANITEVILLE CO.

(14 S. E. (2d), 367)

May, 1940.

*Messrs. Hendersons & Salley,* for appellant,

*Mr. John E. Stansfield* and *Messrs. Williams & Busbee* for respondent,

April 10, 1941.

The opinion of the Court was delivered by MR. ASSO-CIATE JUSTICE FISHBURNE.

By this appeal we are asked to review the decision of the Industrial Commission, affirmed by the Circuit Court, awarding compensation to the respondent for the death of her husband, James Clifford Baker. The record discloses that the findings and conclusions of the hearing commissioner were approved by the commission and the Court.

Baker, an employee of the Graniteville Company, at its Warrenville Mill, died of erysipelas in the Aiken hospital on March 22, 1939. His wife, the claimant, sought com-

pensation on the ground that his death was occasioned by an accidental blow on the right arm on or above the elbow, arising out of and in the course of his employment. He received the traumatic injury on the night of March 10, 1939, when he was hit by a rapidly moving "lay of a loom." It is the contention of the appellant that at least two or three weeks prior to the accidental injury, the deceased, while participating in a chicken fight, was gaffed on the thumb and index finger of his right hand by the spur of a fighting cock. That these wounds became infected, resulting in festering sores; that the infection in time became virulent, and that red streaks appeared on the right forearm, extending from the infected fingers to the elbow. It is argued that these red streaks, as shown by the medical testimony, were the indicia of an infection which developed into septicemia and erysipelas, finally resulting in death by embolism.

The record is voluminous, made so by the testimony of about forty witnesses. But the issue before us is narrowed by the finding of the commission, which held that the accidental blow upon the decedent's right elbow "was the provoking, aggravating, and accelerating cause of the condition from which he is alleged to have died, streptococcus, septicemia, and erysipelas." It is also clear that the commission reached the conclusion that at the time the deceased received the injury upon the elbow, septicemia and erysipelas were dormant, and that the blow caused this latent condition to "flare up" and become aggravated, leading directly to an active erysipelas.

It will aid in the decision of the case to review the evidence.

The deceased, Baker, was employed on the night shift at the Warrenville plant of the Graniteville Company. At least two weeks before he received the blow upon his elbow, his injured thumb and index finger were dressed and given first aid treatment, practically every night by one or more

.of his fellow employees. Several witnesses for the claimant, ·and many more for the appellant, saw the festered condition of the fingers, saw the red streaks extending from the .hand to the elbow, which would appear and disappear; and it is in evidence that upon inquiry the decedent stated that a fighting cock had gaffed him on his fingers. The commission ·made no finding that the injury to the fingers was sustained in connection with his employment. The wounds were described as being red, open, and angry looking, and on the night he received the blow upon his arm they were so pictured, and just prior to the accident a fellow employee advised him to consult a physician. He complained of pain .in his arm on several occasions prior to the blow, and it is said that he stated to one of his fellow employees in reference to his arm, "It looks like the damn thing is going to rot off."

Immediately after the accidental injury he made further complaint about his right arm, and one or more witnesses testified that he was unable to attend to certain of his duties requiring the use of his arm. He never again returned to his work at the mill after March 11th. On the next day, the 12th, he continued to suffer pain, and went to the office of his physician, Dr. Howell, for an examination. He gave Dr. Howell only the history of the blow on his arm. Dr. Howell, testifying for the claimant, stated that the deceased complained of considerable pain below the elbow some distance from the spot where he said he received the blow. The doctor examined the whole arm with great care, and found a slight swelling below the elbow, but with no redness or discoloration about the swollen area. Nor did he detect any red streaks. He had the arm x-rayed, and the x-ray picture showed no fracture and no infection of the bone. He directed that the arm be carried in a sling, and that an ice cap be applied to the swollen area. At that time the doctor had no hint or suspicion of erysipelas as being the cause of the trouble. The next day the deceased returned to Dr. Howell's office.

The swelling was worse and the pain more severe. Dr. Howell being at a loss to account for the source of the trouble, sent him to the Aiken hospital for observation and diagnosis. He examined him at the hospital on Tuesday, and was still unable to make a diagnosis. On Thursday reddish-brown spots appeared on the skin, and on that day he called in for consultation Dr. Chaney, of Augusta, Georgia, who had had wide medical experience in cases of erysipelas. The disease was promptly disagnosed as erysipelas in an acute stage. The arm was swollen three times its normal size, the skin broken in numerous places, and the swelling extended up to the neck and down the right side of the chest to the waist. Mr. Baker died three or four days later.

Dr. Howell said that when he first examined the arm in his office there were no red streaks on the forearm; but he recalled noticing that there was a small piece of adhesive tape on one of Baker's fingers, and that Baker stated that he had received a scratch on the finger.

Dr. Howell testified, as did three other doctors, that erysipelas is a cutaneous disease, which involves the superficial layers of the skin, and that the disease is due almost without exception to infection by streptococcus bacteria, and such bacteria always enter the skin through some abrasion of the cutaneous surface. The bacteria never affect a part which has a sound skin covering. The disease, it is said, becomes manifest ordinarily from two to seven days after the onset of the infection.

Dr. Howell expressed the unshakeable opinion that the streptococcus germ entered Baker's skin through the open sores on his fingers, developing progressively in septicemia, erysipelas, and embolism, from which he died. He stated time and again that the blow, in his opinion, had nothing whatever to do with the progressive development of the disease, nor did it in any way accelerate or aggravate it. Dr. Chaney unreservedly expressed the same opinion, as did Dr. Boone, of the Aiken hospital, who observed the deceased

in the hospital prior to his death. These doctors all testified that in order for a blow to have any provocative effect, it would have of necessity to produce such an injury as would cause a hemorrhage or hematoma underneath the surface of the skin in which blood or serum could accumulate, that is, a black and blue spot or bruise; that if such an area were present streptococcus germs would multiply therein at a great rate and would more rapidly increase the spread of the existing infection.

There is a total absence of evidence showing or tending to show that there was a hematoma or bruise on the arm of the deceased in the area of the blow, or at any other point. Dr. Howell, claimant's witness, said that he had carefully examined the arm, and found no discoloration. The claimant herself testified to the same effect. Dr. Howell was asked whether or not the blow on the arm could have caused a slight hemorrhage or extravasation of blood that would not have shown up beneath the skin. His reply was, "It is possible, but not at all probable, very remote." And further along he stated that such a condition would be a "very remote possibility," and a matter of mere surmise and conjecture. He said also that there was no break or abrasion of the cutaneous surface; the skin was unbroken. He definitely referred the entrance of the streptococcus bacteria to the open wound on the fingers.

Dr. H. H. Wyman, who never saw the deceased before death or after, was called by the claimant as an expert. Upon being given a history and description of the elbow injury, he stated that if the blow caused a rupture on the arm, amounting to a hematoma, this area would constitute a good field in which the streptococcus germ could become active and produce a condition of erysipelas. He agreed with the testimony of the other medical witnesses that the germ would have to enter the skin through an abrasion, and said that the abrasion might be so microscopic as not to be visible to the naked eye. Dr. Wyman, by way of further explana-

tion, said, "the local contusion, which is the effect of the blow, damages the tissues and makes a good field for the germ, if it is present, to light up." He said that the condition described to him "might possibly be the cause of death." Upon being recalled, Dr. Wyman testified that a hemorrhage or hematoma following a blow can be so tiny as to result in no discoloration; that it could be so deeply seated as to be next to the bone, and that this could have been the case with Mr. Baker, and if so, such area could result in an increased infection which would develop until erysipelas set in. Dr. Wyman was never informed about the wound on the fingers, nor asked any question concerning its connection with the disease.

It seems clear that the testimony of Dr. Wyman amounts to nothing more than an inference on an inference upon which to base the finding that the alleged accidental injury aggravated the disease. It is true that Baker did not again work at the mill after he received the blow on his arm, but Dr. Howell testified that this was not significant, and had no reference to the blow. He said that the swelling below the elbow had no traumatic connection, and in his opinion was occasioned solely by the septicemia which had reached its full extent, and was merely contemporaneous with the blow.

The testimony of the physicians as to the want of any causal connection between the traumatic injury and the erysipelas from which Baker died was not binding upon the Industrial Commission. The opinion of an expert witness is intended to aid the commission in coming to a correct conclusion, and the weight and credit to be given such testimony was a matter, of course, to be determined by the commission. But when the commission in effect disregards such expert testimony it must perforce find other competent evidence in the record upon which to base its findings. The evidence given by the physicians is that the trauma suffered by Baker was not a factor in accelerating or aggravating the infection and septicemia which was virulent

in Baker's blood stream when he received the blow. And there is no other evidence in the record except such as is based upon surmise and conjecture, upon which the findings of the commission can be planted.

However much we are disinclined to disturb the finding of the commission, and however limited our authority, when such finding is based upon any competent evidence in the record, we are constrained to hold in this case that the blow upon the arm did not aggravate the pre-existing disease of erysipelas which caused the death of claimant's husband.

Judgment reversed, and case remanded for entry of judgment in favor of the appellant.

Mr. Chief Justice Bonham and Messrs. Justices Carter, Baker and Stukes concur.

ORDER ON PETITION FOR REHEARING

*Per Curiam.*

The claimant, Mrs. Annie Belle Posey Baker, has addressed to the Court a lengthy petition for a rehearing in this cause, in which it is suggested that it appears from the opinion filed that material testimony and applicable principles of law have been overlooked.

In the petition much stress is laid upon a death certificate given, prior to the hearing in this case, by Dr. Howell to a life insurance company which had issued a policy of insurance on the life of the deceased. No mention was made of this certificate in our opinion for the reason that we did not consider that it possessed any probative value.

At the end of an exhaustive examination of Dr. Howell, he testified as follows upon inquiry by the hearing commissioner:

" * * * I want to know what kind of certificate you gave the insurance company indicating what caused his death? What kind of arrangements were made?

"A. I placed as the cause of death, a series of facts as I knew them, a contusion of the elbow, erysipelas, cerebral embolism. That is in line, the insurance company asked me

in my opinion if the death was accidental, and I told them that was for somebody else to decide, and I said I am going to put down all I have put down on the death certificate.

. "Q. What did you put down? A. The same as I have just stated, a contusion of the elbow, an erysipelas, and cerebral embolism.

"Q. Interpret that last in laymen's terms, what you mean? A. I mean that the man came to me and gave me a history of having been hit on the back of the elbow; I mentioned that he later developed erysipelas, and I mentioned that the erysipelas caused his cerebral embolism which produced the sudden death."

A consideration of the evidence previously given by Dr. Howell shows beyond question that he regarded the blow suffered by the deceased on his right arm as having nothing whatever to do with the streptococcus infection which was followed by erysipelas and death. And he stated, as did the claimant herself, that the blow caused no visible bruise or contusion. This testimony he gave under oath in the trial of this cause, and he was the claimant's witness. He testified freely and without hostility, and neither the claimant nor the commissioner could discredit him. Testimony with reference to the contents of the death certificate was objected to by the defendant because the original had not been produced. But, assuming that such testimony was admissible, we fail to see how it could be accepted as proof of a substantive fact. *State v. McKay,* 89 S. C., 234, 71 S. E., 858; *State v. Nelson,* 192 S. C., 422, 7 S. E. (2d), 72. If admissible at all, it could serve only as an impeachment. When the testimony of Dr. Howell is read from end to end, it can give rise to only one reasonable inference, and that is that the accidental blow resulted in no hemorrhage or edema. As stated, this testimony was confirmed by that of the claimant.

The Court made no reference in its opinion to the testimony given by Mrs. Baker, the claimant, when she was re-

called to the stand, because the commission made no finding based on her testimony.

In the forty-eighth paragraph of the award, the commissioner states: "It is found that Mrs. Annie Belle Baker, being recalled, positively testified that claimant did not have injured hands as result of a chicken fight, but that he frequently went to chicken fights." But the commission made no finding at all upon this testimony. Nor did this evidence in any sense support the charge that the accidental blow caused the death of Mr. Baker.

In another portion of Mrs. Baker's testimony she testified, over objection, that the deceased told her that he had injured his finger in the mill. This testimony was allowed, but no pertinent finding was made thereon. Because the commissioner made no reference to this testimony in his final conclusions, we made the statement in the opinion: "There is no suggestion that the injury to the fingers was sustained in connection with his employment." In the official report of the decision, this sentence will be changed so as to read: "The Commission made no finding that the injury to the fingers was sustained in connection with his employment."

The specific finding of the commission upon which the award was made is as follows: "From the preponderance of the testimony the commissioner finds as a fact that there was an accidental injury, which has never been denied or proven, which arose out of and in the course of this employee's employment the night of March 10, 1939, while he was working in the Warren Mill of the Graniteville Company, which together with any dormant or latent condition that might have existed immediately disabled claimant from Saturday, March 11th, on which day he did not work, until his death and which injury was the provoking and aggravating and accelerating cause of the condition from which he is alleged to have died, streptococcus, septicemia and erysipelas."

It will be noted that the pre-existing disease of erysipelas is, to all intents and purposes, found as a fact. The whole theory upon which the case was tried was that the erysipelas was in existence, either active or dormant, and that it was the blow, in conjunction with the erysipelas, which caused the death of the deceased. The commission placed no responsibility or liability on the defendant for the origin or inception of the disease; it was accepted as being present at the time the deceased received the blow.

The petitioner inadvertently errs in saying that the opinion contains the statement that the deceased used his arm for two days after the accidental blow. The opinion heretofore filed specifically states: "He never again returned to his work at the mill after March 10th (the night he received the blow)."

The answer to the petitioner's criticism with reference to the method of appeal followed by the defendant when asking for a review by the full commission is that the intention of the compensation act was to provide simplicity of procedure. The exception contained in the defendant's application for review by the full commission fully met the rule stated in *McDonald v. Palmetto Theatres, S. C.,* 13 S. E. (2d), 602, 196 S. C., 460.

The petition has prompted a complete review of the record in this case. However, a re-examination convinces us anew that there is no competent evidence from which a reasonable inference can be drawn that the blow upon the arm accelerated or aggravated the pre-existing disease of erysipelas which caused the death of claimant's husband.