15779

SLIGH v. PACIFIC MILLS *ET AL.*

(35 S. E. (2d), 713)

*Messrs. Nelson,. Mullins & Grier,* of Columbia, Counsel for Appellant,

*Mr. Henry H. Edens,* of Columbia, Counsel for Respondent.

November 12, 1945.

Mr. Associate Justice Taylor delivered the unanimous Opinion of the Court.

The respondent, an employee of Pacific Mills, filed this claim for compensation with the South Carolina Industrial Commission alleging that he had suffered a compensable hernia on the 24th day of March, 1944, while in the course of his employment with this company. The compensation Commissioner made an award in favor of the claimant which was sustained upon review by the full Commission, and upon appeal to the Circuit Court, the award was sustained. The claim is based upon Section 7035-2, Subsection R of the South Carolina Workmen's Compensation Act (39 St. at Large, page 1231, *et seq.*), which reads:

"In all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the course of the employee's employment, it must be definitely proven to the satisfaction of the industrial commission:

"First. That there was an injury resulting in hernia or rupture.

"Second. That the hernia or rupture appeared suddenly.
"Third. That it was accompanied by pain.

"Fourth. That the hernia or rupture immediately followed an accident.

"Fifth. That the hernia or rupture did not exist prior to the accident for which compensation is claimed."

Because of the peculiar characteristics of hernia, the legislature has seen fit to make hernia subject to the foregoing provisions and exceptions under the Workmen's Compensation Act and the burden is upon the claimant to establish proof that there was an injury resulting in hernia; that the hernia appeared suddenly; that it immediately followed the accident; that it did not exist prior to such accident for

which compensation is claimed; and that the accidental injury was accompanied by pain. Failure in either one of the above requirements will bar the claimant from recovery.

Compensation laws should be given a liberal construction in furtherance of the beneficent purpose for which they are enacted, and if possible, so as to avoid incongruous or harsh results. (*Baltimore & Philadelphia Steamboat Co. v. Norton,* 284 U. S., 408, 414, 52 S. Ct., 187, 189, 76 L. Ed., 366.)

In our opinion the legislative purpose evident in our Act is to place specific restrictions around compensation for hernia. The words "suddenly" and "immediately" are elastic terms, admitting much variation of definition. As used in the Acts, these words should not be construed as the equivalent of the word "instantaneous". Like similar absolute expressions, they are used here with less strictness than the literal meaning requires. For to give them their literal signification in all cases, regardless of the attendant situations and circumstances, would often defeat meritorious claims upon purely technical grounds, and thus frustrate the purpose of the Act. However, while we should give the compensation act a liberal construction, we are not justified in so construing it as to do violence to the requirements of the Act.

"It is a familiar formula that findings of fact by a Board or Commission on a claim under a Workmen's Compensation Act are conclusive; and the appellate court will not review such findings except to determine whether there is any evidence to support the award. It may reverse an award if there is an absence of any evidence to support it, but it is not a trier of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the Board, its findings are conclusive in the absence of fraud, and neither this Court nor the Court of Common Pleas is at liberty to interfere with them. This is but an application to Workmen's Compensation cases of the funda-

mental principle universal in Courts of law, that whether there is any competent evidence is for the Court to determine, but whether the evidence is sufficient is a qustion for the jury; the function of the Commission being in that respect that of a jury in actions of law. While the findings of fact by the Industrial Commission will be upheld if there is any evidence on which it can rest, it must be founded on evidence, and cannot rest on surmise, conjecture or speculation. *Phillips v. Dixie Stores, Inc. et al.,* 186 S. C., 374, 195 S. E., 646; *Murdaugh v. Robert Lee Const. Co.,* 185 S. C., 497, 194 S. E., 447; *Spearman v. F. S. Royster Guano Co.,* 183 S. C., 393, 199 S. E., 530." (*Rudd v. Fairforest Finishing Co.,* 189 S. C., 188, 200 S. E., 727.)

The law governing this type of case is fully set forth in the case of *Rudd v. Fairforest Finishing Co., supra,* and it is with these principles in mind that we have reviewed the facts in the instant case.

The claimant specifically testified that he received such injury on the 24th day of March, 1944; that he had never had any trouble with his side before; that a sharp pain accompanied such injury and that he reported same to his foreman and thereafter on the same day reported to Dr. Hopkins, who informed him that he was suffering from a hernia.

The undisputed facts are that on the day previous, March 23rd, the claimant, who, over a period of years had been taking treatment from Dr. S. E. Wheeler at the Columbia Hospital Clinic for another ailment, reported to the Clinic and asked that Dr. Wheeler examine his left side, saying he thought he had a boil. Dr. Wheeler made the examination and informed him that the protrusion was not the result of a boil but a rupture and that he needed an operation. A portion of this undisputed testimony follows:

"Q. After you discovered this boy had a hernia, did you report that back to Dr. Hopkins? A. Yes, sir, I did.

"Q. How was it you reported it to Dr. Hopkins? A. Well, I will tell you the whole thing.

"Q. Well, yes. I think I know. I just want to get it on the record. A. The boy showed me this small rupture; it wasn't a large one; it was small. He said he thought it was a boil and I asked him was he doing any heavy work and he said 'yes'. And I asked him how long it had been there. He didn't know, and he told me that he had hurt himself on a job. The boy was a good patient. And I just happened to meet Hopkins, who has an office right beyond me, and I told him 'I have got a colored boy there who is working for Pacific Mills, and you are the physician down there.' As I remember the boy came in either the next day or the next day. But Dr. Hopkins knew. What he told Dr. Hopkins, I don't know.

"Q. But you did report it to Dr. Hopkins the same day this happened? A. Yes, sir."

### Re-Cross Examination

By Mr. Edens:

"Q. You say the boy told you when you first found it— told you he had hurt himself on the job? A. Yes, sir. He didn't say when or how or nothing. He just said he hurt himself doing heavy work."

### Re-Direct Examination

By Mr. Grier:

"Q. And he didn't know he had a rupture? A. No; he didn't know it was a rupture. I told him it was and advised him that he ought to be operated on. I said an operation was the only thing that would do a rupture any good, and I spoke to Dr. Hopkins purely because I was trying to help the boy out"

### Re-Re-Cross Examination

By Mr. Edens:

"Q. He advised you he was doing heavy work at the mill? You questioned him about what he was doing? A. He just said he was doing heavy work. He didn't say what he was doing—if he did I don't remember. He just said he was doing heavy work.

"Q. And that hernia appeared recent to you? A. It did. The fact that he showed it to me when he noticed it made me believe it was a very recent thing, because I insisted on all of them coming to me if anything unusual happened to them.

"Q. And it was because he told you it happened to him on the job that you told Dr. Hopkins of it? A. That is the reason, yes, sir.

"Q. You knew that Dr. Hopkins was the mill doctor? A. Yes, sir.

"Mr. Edens: That is all.

"Mr. Grier: That is all.

"Witness excused."

It is therefore clear that if the claimant suffered the injury while at his work it was not accompanied by pain, as he testified he had not had any trouble with his side prior to the 24th (the day he made his report to his overseer). Therefore, it is impossible to determine the time of such rupture other than it occurred some time between the two examinations by Dr. Wheeler and the doctor's statement that the condition was a recent one.

"The injury and the pain must be referable to a definite time, place, and circumstance, and, in accordance with the provisions of the Act, pain must accompany the accidental injury. Otherwise, how could the inception of the hernia be definitely fixed and accounted for. The office of this statutory requirement is to date the onset of the hernia. A re-

quirement that pain accompany the rupture or protrusion would be of no effect in determining its cause, unless the rupture or hernia occurred instantaneously with the accidental injury. For if there is no pain indicative of an abdominal lesion at the time of the accident, as was the case here, and such is not required to be established, then it might well result that the cause of the hernia would be left in the field of surmise and conjecture." (*Rudd v. Fairforest Finishing Co., supra.*)

If the date of the accident was March 24th, as testified to by claimant, it is clear the rupture or hernia existed prior thereto.

Counsel for claimant argues that the Hearing Commissioner is obviously satisfied that the hernia existed on the 23rd of March. The only reasonable inference to be drawn from the Commissioner's award is that when the respondent learned from Dr. Wheeler that he had ruptured himself while doing heavy work on his job, he reported the accident just as it had happened, but reported it as having happened on the 24th of March, when as a matter of fact it had happened between the two examinations by Dr. Wheeler when the respondent went on his regular visit to the clinic; that it is not unreasonable to assume that as soon as the respondent here learned that the pain which occurred at the time of the accident was caused by a rupture, that he should the next morning report the accident as though it had only just happened. There is no indefiniteness as to the time of the accident under the view taken by the Hearing Commissioner as the rupture was of recent occurrence and was not detected until the 23rd of March, as such condition would have been revealed by previous examination had it existed for any appreciable time prior to the 23rd.

To adopt this view would be delving into the realm of surmise and conjecture, which neither the Commission nor the Courts are at liberty to do.

This Court is of the opinion that the evidence as a matter of law does not sustain the contention of claimant that the rupture or hernia did not exist prior to the accident on March 24th, for which compensation is claimed, and the judgment and award rendered herein should be reversed and it is so ordered.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.