16040

BREWER v. CHARLESTON SHIPBUILDING & DRYDOCK CO. *ET AL.*

(46 S. E. (2d) 173)

*Messrs. Williams & Busbee,* of Aiken, for Appellant,

*Messrs. Buist & Buist,* of Charleston, for Respondents,

February 5, 1948.

OXNER, Justice: This is an appeal by the claimant, Frank B. Brewer, from an order of the Circuit Court reversing an award of the Industrial Commission which required the employer and carrier to pay claimant temporary total disability resulting from an infection of his left hand and to furnish him with medical treatment. The sole question for determination is whether the evidence is sufficient to justify the conclusion of the Commission that there was a causal connection between the accident sustained by claimant and the diseased condition of his left hand.

Claimant was employed as a painter by the Charleston Shipbuilding and Drydock Company and during June, 1945, while sandpapering the beams on the inside of a ship preparatory to painting same, he received a deep cut on his left thumb. He immediately went to the first aid office on the dock and reported his injury to the head nurse. She made a written record of the accident and turned claimant over to an assistant nurse who dressed and bandaged the wound. His employer then gave him lighter work which only required the use of one hand. Claimant returned to the first aid station every morning for a period of a week or two

where a nurse applied some kind of salve to the wound and dressed his hand. The condition of his thumb did not improve. Two or three weeks after the accident (the testimony of claimant is rather indefinite as to the exact period), the thumb became infected. Claimant testified that it was "open and festered up." A few days before the Fourth of July he left his job and went to his home in Aiken County. Claimant's son testified that his father's "finger was infected and broken out before he went home around the 4th of July." He was delayed in returning to his job at Charleston on account of illness in the family. He did not report back to work until the latter part of July, at which time he says that his hand "was in bad shape" and the infection which first "went around the thumb" had gradually spread to the palm and back of his hand. He was refused employment and returned home. He testified that he continued to use the salve which the nurse gave him and kept his hand bandaged, but the infection "did not clear up but got worse." During the latter part of August, 1945, he obtained employment as a weaver in a cotton mill in Aiken County where he continued to work until January 4, 1946, at which time he says he was compelled to discontinue all work because his duties required the use of both hands. Claimant, his son, and his daughter-in-law testified that his thumb and hand were perfectly normal and healthy prior to the injury. The testimony also discloses that before being employed at the shipyard claimant was required to submit to a physical examination which he passed.

During the month of March, 1946, claimant was operated on for hemorrhoids by family physician, Dr. Brooks of Aiken, South Carolina, and since that time his hand has been under the care and treatment of this physician. The only medical testimony offered by claimant was in the form of a letter written by Dr. Brooks to claimant's counsel on July 8, 1946, which, by stipulation of counsel, was admitted in evidence as containing what Dr. Brooks would testify to, if present. This letter is as follows:

"Mr. Frank Brewer came to see me about middle of March, 1946—history of laceration of left thumb while working in ship yards at Charleston, S. C., in June, 1945. The wound became infected and was treated at ship yard until July, 1945, when he returned home. The infection failed to clear up under treatment advised and he came to see me in March, 1946.

"Examination in March revealed a fungus infection of skin of entire thumb spreading over onto dorsum (back) of hand and also the palm of hand.

"This is a very stubborn condition and has resisted treatment to the present time. He has just finished a series of X-ray treatment.

"The infection apparently developed from and following his injury."

The only medical testimony offered by the employer and carrier was that of Dr. Seigling, an orthopedic surgeon of Charleston. He first examined claimant's hand on July 11, 1946, and found his "thumb was considerably infected." He again examined claimant's hand on the day of the hearing and, after testifying that the thumb was then "virtually free of infection", described the appearance of claimant's left hand as follows: "I notice that on the palmar surface of the hand there is a scaly formation, and there are several small pustules. There is an area about 3½ inches in diameter with an advancing border extending from the base of the index and middle fingers to the region over on the dorsal side of the hand as far as the line of the ring finger. There is also scaly and infected areas extending over to the base of the thumb." He diagnosed the skin condition as "a fungus infection" and expressed the opinion that it could be cured if properly treated by a skin specialist. He said that "it is virtually impossible for the infection to develop as the result of an injury, because a fungus infection starts usually from the fungus entering the skin and not from an injury." Later he testified as follows when examined by the Hearing Commissioner:

"The Court: He (claimant) testified that after he got his thumb hurt it came down into the palmar surface of his hand, and that he never had it before until he had his thumb condition. Could you associate the condition of his hand with the injury to his thumb? A. I would say it is virtually impossible for such an infection to be the result of an injury. I would say that I did not say that fungus could not go into open wounds, but I would say that we see it mostly without an open wound."

While the question is undoubtedly a close one, we think the evidence, together with the inferences which may legitimately be drawn therefrom, is sufficient to support the finding of the Industrial Commission that there was a causal connection between the accidental injury sustained by claimant and the diseased condition of his hand from which he is now suffering. Respondents contend, and the Court below held, that this case is controlled by our recent decisions in *Branch et al. v. Pacific Mills et al.,* 205 S. C. 353, 32 S. E. (2d) 1, and *Mack et al. v. Post Exchange et al.,* 207 S. C. 258, 35 S. E. (2d) 838. It was held in these cases that where the claimant relies solely upon medical testimony to show a causal connection between an accidental injury and a certain result, testimony by medical experts that the ailment in question "possibly" or "might have" resulted from the accident, or that "the one could have brought about the other", is not sufficient; and to justify an award it is necessary that such medical experts "go further and testify at least" that in their professional opinion the result in question "most probably" came from the cause alleged. In both of these cases there was little or no evidence of the cause and effect relation other than the medical testimony to the effect that the accidental injury "could have", "might have", or "possibly" caused the employee's death. In each of them the employee was suffering from a pre-existing chronic disease which subsequently caused his death and the question involved was whether the accidental injury contributed to or accelerated his death. In the *Branch case,* the employee,

while at work in the mill, died as a result of a stroke or cerebral hemorrhage. For several years preceding his death he suffered from hypertension which was sufficient to have caused a stroke at any time and in fact was sick when he went to work on the morning of his death. In the *Mack case,* the employee suffered a burn on his left leg which became infected, but this wound was clean and had largely healed when he died six weeks later from arteriosclerosis. Long prior to the injury this employee had suffered from this chronic disease which finally resulted in his death. Also, in *Baker v. Graniteville Co.,* 197 S. C. 21, 14 S. E. (2d) 367, another case relied on by respondents, the employee was suffering from a pre-existing erysipelas which the proof showed caused his subsequent death.

In the instant case the record discloses no evidence that the fungus infection from which claimant now suffers existed prior to the accidental injury. He was required to stand a physical examination before being employed. If this examination had disclosed any such infection, it is reasonable to infer that respondents would have offered the record in evidence. The testimony is all to the effect that claimant's hand was perfectly normal prior to the injury. Shortly thereafter the laceration on his left thumb became infected, never healed and became progressively worse. The infection first "went around the thumb" which had been injured and thereafter gradually spread to the palm and back of his hand. We have, therefore, in this case circumstantial evidence which, although probably insufficient alone to sustain an award, is of some probative value in establishing the cause and effect relation. In addition to this, we have the opinion of the attending physician that "the infection apparently developed from and following his injury." Respondents contend and the Court below held, that the quoted language of Dr. Brooks is not "the equivalent of his professional opinion that there was a causal connection between the injury to the thumb and the diseased or fungus condition which he found to exist at that time." While unfortunately the language used by Dr.

Brooks is not altogether clear and while it is to be regretted that any ambiguity was not removed by requiring this witness to testify or furnish an additional statement, we are inclined to think that he intended to give a professional opinion, deduced from the history of the case and his examination and treatment of claimant, that the fungus infection was the result of the injury sustained. But even if we construe the opinion of Dr. Brooks as being less positive, his opinion would nevertheless be of some probative value to be considered in connection with the other circumstances of the case. In speaking of the character of medical testimony necessary to establish the existence of a causal connection between an injury and claimant's employment, the Court in *Madore v. New Departure Mfg. Co. et al.,* 104 Conn. 709, 134 A. 259, 261, said: "If upon the facts the medical expert is merely willing to testify that the disease might have, or was likely to have, resulted from the employment, or the conditions under which it was carried on, but is unwilling to go further and testify that in his opinion, taking into consideration all of the facts presented and considering every other hypothesis suggested, it was reasonably probable that the disease resulted from the employment, and therefore the employment was its direct cause the commissioner or court should not conclude that the disease did result from the employment, unless the facts outside this medical testimony fairly warrant that conclusion. *Mauchline v. State Ins. Fund,* 279 Pa. 524, 124 A. 168. *We do not intend by this to exclude from consideration the testimony of the medical witness who merely states that the accident or disease might have resulted from the employment, or the conditions under which it was carried on; it may be invaluable, as an expression of a cautious opinion, in corroboration of other testimony.* What we do intend is that the trier cannot himself reach a definite conclusion when he has nothing to rely upon but the opinion of a medical witness who is unable, with all of his professional learning and experience, to reach the

definite conclusion which the court is required to reach upon the same facts in making an award." (Italics ours.)

Claimant's counsel cite the cases of *Poston v. Southeastern Const. Co. et al.,* 208 S. C. 35, 36 S. E. (2d) 858, and *Ballenger v. Southern Worsted Corporation et al.,* 209 S. C. 463, 40 S. E. (2d) 681. In each of these cases an award for impairment of vision was sustained solely upon lay testimony, although the medical testimony was positively to the effect that the condition of claimant's eyes was in no way related to the accident. It is probably true, as respondents contend, that the circumstantial evidence in those cases was somewhat stronger than the non-medical evidence in the instant case, for there the alleged defective eye condition appeared immediately where as in the instant case the infection of the hand was not noticed for several weeks after the accident; but it is also true that the non-medical evidence in this case is corroborated to some extent at least by the testimony of Dr. Brooks while in the *Poston* and *Ballenger cases* there was no corroborating evidence and the medical testimony was wholly to the contrary.

Although the cases of *Jeffers v. Manetta Mills,* 190 S. C. 435, 3 S. E. (2d) 489, and *Holly v. Spartan Grain & Mill Co. et al.,* 210 S. C. 183, 42 S. E. (2d) 59, involved different factual situations, the principles there laid down tend to support the conclusion herein reached.

The Industrial Commission would have been fully justified in concluding from the evidence that there was no causal connection between claimant's injury and the diseased condition of his hand, but that tribunal has reached a different conclusion and we cannot say it is without evidentiary support.

Judgment reversed and case remanded for the purpose of entry of judgment in accordance with the award of the Industrial Commission.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.