[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 127 
The Order of Judge Sease follows:
This case is before me on appeal from an Award of the South Carolina Industrial Commission affirming an Award of the Single Commissioner, whereby the Defendants were directed to pay to the Claimant the sum of Twelve Hundred and Fifty and no/100 ($1250.00) Dollars "for serious bodily disfigurement", the basis for such Award, as set forth in the Hearing Commissioner's Opinion, being because of the removal of one of Claimant's testicles and because "the Claimant has a slight limp".
The Defendants duly applied to the Full Commission for a review of the Single Commissioner's Award, upon grounds *Page 129 
which are substantially the same as those presented by exception to this Court, and the Award of the Hearing Commissioner was affirmed by the Full Commission by an Opinion which simply adopted the Opinion and Award of the Hearing Commissioner as that of the Full Commission.
There is no dispute about the fact that the Claimant sustained an injury by accident arising out of and in the course of his employment with the Defendant-Employer on July 19th, 1946, the other Defendant being the statutory Insurance Carrier for the Employer. It was admitted that the Claimant sustained a left indirect hernia and the Insurance Carrier provided a surgical operation for the correction of such hernia and paid the Claimant the compensation for the temporary total disability to which he was entitled from the time he sustained his injury until he was discharged by the physician and returned to work. Subsequent to that time, however, the Claimant made further claim for compensation, which resulted in the proceedings out of which this appeal arises. The Commission has held that Claimant is entitled to no further compensation for temporary total disability or otherwise than for the disfigurement award which has been made and, there being no appeal by the Claimant from that finding, the same has become final.
The Defendants, however, do challenge the Award for serious bodily disfigurement, the exceptions raising two fundamental questions: (1) that the removal of a testicle does not constitute serious bodily disfigurement within the meaning of the Workmen's Compensation Act as construed by the Supreme Court of this State, and (2) that even if such a condition is compensable that, as a matter of law, there is no causal connection shown in the record between the injury sustained by the Claimant and the conditions for which the disfigurement award has been made.
In view of the conclusions which I reach on the second point it becomes unnecessary to decide the first point, although *Page 130 
some brief reference to that question will be made later in this Order.
It appears to be undisputed that the accident that Claimant sustained was suffered when he undertook to pull a pin on a picker machine in the Employer's plant, and that the injury involved only a strain, without any blow or direct contact with the Claimant's person. This is a fact of some importance as shown hereinafter.
Following the injury on July 19th, 1946, the Claimant was referred to Dr. L.G. Able, a surgeon in the City of Spartanburg who examined the Claimant on August 6th, 1946, preparatory to operating for the repair of the hernia. On that examination, customarily made as a matter of routine by the surgeon before performing such an operation, Dr. Able discovered that Claimant had a mass in the left testicle on the same side that he had the hernia. Dr. Able testified that, where such masses or tumors are found, the dangerous thing about them is cancer, and that is what he suspected. Accordingly, he called in Dr. I.A. Phifer, an urologist (who also testified), and Dr. Phifer concurred with Dr. Able that the testicle should be removed so as to avoid, if possible, the tumor or mass from becoming malignant or cancerous. Dr. Able explained to the Claimant that he intended to remove the testicle, to which the Claimant gave him permission, and on August 8th, 1946, Dr. Able operated, repairing the hernia and removing the testicle in the course of the same operation. It is for this removal and a limp which the Claimant asserts that he has that he has made claim and for which he has been awarded compensation, and it becomes necessary to determine whether there is substantial competent evidence in the record to support a reasonable inference that the removal of the testicle and the limp, or either of them, are causally connected with the accident.
Section 2 (f) of the South Carolina Compensation Act, Act July 17, 1935, 39 St. at Large, p. 1233, provides: *Page 131 
"`Injury' and `personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."
It is settled by the decisions of the Supreme Court of this State that a Claimant who asserts the right to compensation carries the burden of establishing the necessary facts to entitle him to such compensation; that there is no presumption in favor of compensability (Ruddv. Fairforest Finishing Co., 189 S.C. 188, 200 S.E. 727); that Awards of the Industrial Commission may not rest upon surmise, conjecture or speculation, but must be founded upon substantial evidence, and that if the evidence is all one way, or if the findings of the Commission are based on surmise, speculation or conjecture, that the issue becomes one of law for the Courts and not of fact for the Commission (see Rudd v. Fairforest Finishing Co., supra; In re Crawford,205 S.C. 72, 30 S.E.2d 841; Sligh v. Pacific Mills,207 S.C. 316, 35 S.E.2d 713; McDowell v. Stilley PlywoodCo., 210 S.C. 173, 41 S.E.2d 872, and numerous other cases cited in West Publishing Company Digest, Workman's Compensation, Key 1409).
I have given most careful consideration and study to the evidence in this case in an effort to see whether there is any evidence, as distinguished from speculation and surmise, upon which it can be found as a reasonable inference by the fact-finding body that the conditions for which the award was for were causally connected with the accident, and after such study and consideration the conclusion seems to be inescapable that there is no such evidence and that, therefore, the award of the Commission must be reversed.
There are certain well established rules with respect to the effect of expert testimony. It is unquestionably the law, as stated in Poston v. Southeastern Const.Co., 208 S.C. 35, 36 S.E.2d 858, and Ballenger v. *Page 132 Southern Worsted Corporation, 209 S.C. 463,40 S.E.2d 681, that expert testimony is not binding upon the fact-finding body if there be competent substantial evidence to the contrary. However, it is equally well established as said in Smith v. Southern Builders, 202 S.C. 88,24 S.E.2d 109, 114, in quoting from an Opinion of the Court of Appeals of Virginia (Lawson v. Darter, 157 Va. 284,160 S.E. 74), the Supreme Court in this State said:
"In matters of this kind which are not of common knowledge, we must accept the opinion of experts."
See also Crocker v. Life Insurance Company of Virginia,183 S.C. 439, 191 S.E. 312, where lay testimony, as to an apparent condition of health, was held not to create an issue of fact against medical evidence that cancer existed.
And in Baker v. Graniteville Co., 197 S.C. 21,14 S.E.2d 367, 370, the Supreme Court, in holding that there was no evidence on which a finding of fact of aggravation or acceleration of a previous condition could be based, uses this language:
"The testimony of the physicians as to the want of any causal connection between the traumatic injury and the erysipelas from which Baker died was not binding upon the Industrial Commission. The opinion of an expert witness is intended to aid the Commission in coming to a correct conclusion, and the weight and credit to be given such testimony was a matter, of course, to be determined by the Commission.But when the Commission in effect disregards suchexpert testimony it must perforce find other competent evidencein the record upon which to base its findings. The evidence given by the physicians is that the trauma suffered by Baker was not a factor in accelerating or aggravating the infection and septicemia which was virulent in Baker's blood stream when he received the blow. And there is no other evidence in the record except such as is based upon surmise and conjecture, upon which the findings of the Commission can be planted." (Emphasis mine.) *Page 133 
And the extent of the effect of hypothetical evidence is stated, in Smith v. Southern Builders, 202 S.C. 88,24 S.E.2d 109, to be:
"that the probative value of expert testimony based upon hypothetical facts stands or falls with the existence of the facts upon which it is predicated".
And where medical evidence is relied upon to create an issue of fact, it is not sufficient that the doctors testify as to possibilities, but "`they must go further and testify at least that, taking into consideration all the attending data, it is their professional opinion (that) the result in question most probably came from the cause alleged.'" Quotation in Mack v. Branch No. 12, Post Exchange,207 S.C. 258, 35 S.E.2d 838, 843 from a Pennsylvania opinion (Fink v. Sheldon Axle Spring Co.,270 Pa. 476, 113 A. 666.)
An analysis of these various decisions, which have dealt with the effect of medical testimony and of such testimony in relation to lay testimony, seems to me to lead to certain definite conclusions: (1) That, where the condition in question is one with respect to which the lay mind can have knowledge, as with respect to whether a person can see or not, as in the Poston and Ballenger cases, that medical evidence is not conclusive if there is lay testimony to the contrary; (2) that there are certain fields with respect to which the lay mind is not competent to pass upon, and in such scientific fields reliance must be had upon expert evidence alone; (3) that in any event, where medical evidence is all one way, it must be accepted and cannot be disregarded unless there is competent substantial evidence to the contrary; (4) that medical evidence which deals in possibilities only does not create an issue of fact; (5) that medical evidence based on hypothetical questions has no value beyond the extent it is predicated upon facts actually proven in the record. *Page 134 
Coming now to the application of these rules to the evidence in the cases at bar, we find that Dr. Able testified positively that the condition of the testicle which caused him to operate for its removal was in no way caused, aggravated or accelerated by the injury which the Claimant had suffered. His testimony is, as was said by the Supreme Court of the testimony of another Doctor in the case of Branch v.Pacific Mills, 205 S.C. 353, 32 S.E.2d 1, 3, an effort to "honestly, truthfully and patiently answer all questions propounded to him". He said that the condition was such that he would have unquestionably advised its removal, whether the Claimant had suffered a hernia or not, and that he would have felt himself remiss in his professional duty if he had operated for the repair of the hernia and had not removed the testicle after learning of the existence of the tumor. After the tumor was removed a laboratory test was made of it by the pathologist and his opinion was that there was "chronic inflammation of the tunica vaginalis testis and fibrosis of the spermatic cord". Such condition, it was testified, would not come about within a few days, but, as indicated by the pathologist's report, was "chronic". Furthermore Dr. Able testified that, if the condition of the mass or the tumor had been affected by any injury, there would be bruised tissue, a hematoma, that is a lot of hemorrhage into the testicle or into the spermatic cord, and there was no such condition present in this case. His testimony further was that the fibrosis of the spermatic cord established long continued existence of this tumor, and that it was not recent, because such fibrosis would not form within a short period of time. When questioned by the Hearing Commissioner as to whether there could have been an aggravation of the testicle condition, that is, if the strain was sufficient to cause the hernia could it have aggravated the testicle condition, spermatic cord and all, the Doctor testified that he thought the Claimant "would have had hematoma then, too, if there had been injury, but the pathologist made the report of chronic inflammatory process that had been there some time apparently, *Page 135 
with fibrosis, and it takes some time to get fibrosis in the spermatic cord". He said that the condition which existed would not arise in less than a period of six months, probably longer, and when questioned as to whether a small hematoma might have occurred and cleared up between the date of the injury and the date of the Doctor's examination, Dr. Able testified that a small hematoma would not have caused the tumor that he found, due to its size and the amount of fibrous tissue. Dr. Able testified repeatedly that there was absolutely no connection between the injury which produced the hernia and the tumor which he removed along with the testicle, and his testimony is summed up by his negative answer to the question "Was there anything that occurred with respect to that hernia, in your opinion, which produced, by aggravation or otherwise, the necessity for removing that testicle?", and that if the Claimant had never had the injury and had never had the hernia, he would have had this tumor and the testicle should have been removed.
Dr. Phifer, who saw the Claimant at Dr. Able's request, likewise was definitely of the opinion that there was no connection between the condition existing and the injury, and concurred with Dr. Able that the testicle should have been removed.
The cause and duration of this tumor are obviously matters with respect to which the Claimant could not competently testify, even if he had undertaken to do so, which he did not. So the testimony of Drs. Able and Phifer positively, and without contradiction, establishes the want of any causal connection between the injury and the necessity for the removal of the testicle. It remains to be seen whether the testimony of Dr. Tarbox, offered as an expert witness on behalf of the Claimant, constitutes evidence to the contrary.
Bearing in mind the rules of law applicable to such testimony and carefully reading the testimony of Dr. Tarbox as a whole, as it must be (Baker v. Graniteville Co., supra, page *Page 136 
371 of 14 S.E.2d), Dr. Tarbox's testimony is not in conflict, but rather in agreement, with that of Drs. Able and Phifer. Dr. Tarbox did not see the Claimant until approximately five and one-half months after the operation had been performed. Dr. Tarbox testified that the Doctor who was in attendance at the time of the operation would have been in position to have determined what condition existed that justified the removal of the testicle, and that he, Dr. Tarbox, examining him at that late a date, and simply finding the testicle removed, had no basis on which he could testify as to what condition existed with respect to the testicle, except the history. He agreed that if a man has a chronic inflammation of the testicle it is advisable to remove it, for the same reasons stated by Dr. Able, to prevent the possibility of malignancy, and that if he had been the physician and had found that condition existing, he would have advised the removal of the testicle whether the patient had a hernia or not. In other details he concurred with the action that was taken and stated that this Claimant might very well have had a chronic inflammation that was disconnected altogether from the injury, and that the fact that the testicle was removed, which was the only fact that Dr. Tarbox could testify to, does not establish a connection between the accident and the existence of the tumor.
Even if Dr. Tarbox had undertaken (which he did not) to testify hypothetically as to a causal connection, that testimony would be without probative value because the facts are not in the record and the hypothetical evidence would have no value, unsupported by such facts, nor could a physician, testifying to his opinion, base an opinion upon the opinion of another physician.
This case appears more closely affected by the situation existing in Baker v. Graniteville Co., supra, than any other opinion of the Supreme Court. Here it was testified unquestionably that, if the Claimant had received any injury to his testicle, there would have been a hematoma, and that *Page 137 
there was no such hematoma present. In the Baker case the contention of the Claimant depended upon the establishment of the existence of a hematoma, which the medical evidence showed never existed and, therefore, the evidence of an expert testifying hypothetically was held not to create an issue of fact, because it depended upon the existence of a hematoma, and the evidence was that none such ever existed.
It is not insignificant that the Hearing Commissioner's rulings with respect to Dr. Tarbox's testimony (from which Claimant has not appealed) place a definite limitation upon the extent of Dr. Tarbox's evidence. At one point the Hearing Commissioner ruled that Dr. Tarbox could not "testify as to whether or not he had a causal connection because he wasn't present when the man was operated on, and he has testified as to the history that the man gave him, and as to his findings on his examination", and a moment later further announced his ruling to be "That unless the doctor was present, (at the time of the operation) he can't testify as to whether or not the hernia had any connection with the tumor".
There is another and equally compelling reason why it must be held that the evidence admits of no inference that the tumor was caused by the injury. It is undisputed that the only injury or accident which the Claimant had was in pulling a pin on a machine, and that he was never struck in any way. Dr. Able testified that, before a tumor can be affected on the testicle, that there must be one of two things: "a direct blow on the testicle, or the blood supply to the testicle itself". And later, on the same point, he testified that when he had reference to a trauma so far as the testicle is concerned, he meant "a direct blow on the testicle itself or repeated blows, contact with the testicle", — "As distinguished from a strain". Dr. Phifer also testified that a strain would not be sufficient, that there would have to be a direct injury to the blood supply of the testicle and, with this testimony of Drs. Able and Phifer, Claimant's expert, Dr. Tarbox, *Page 138 
agrees. He gives the causes of tumors in testicles to be cancer, chronic inflammatory conditions, continued bruising or injury as a result of a traumatic injury, and as a result of tuberculosis. The continued bruising and injury as a result of a traumatic injury Dr. Tarbox a little later stated to mean direct repeated blows or one heavy blow.
There being no evidence to the contrary than that the Claimant could not have suffered a tumor of the testicle without a blow directly contacting the testicle or the blood supply to the testicle, and he having received no such injury, there is no basis, in this record, for holding that the tumor could have been affected by this injury.
As generally supporting these conclusions see Branch v.Pacific Mills, 205 S.C. 353, 32 S.E.2d 1; Mack v.Branch No. 12, Post Exchange, 207 S.C. 258,35 S.E.2d 838; Burnett v. Appleton Co., 208 S.C. 53,37 S.E.2d 269; Baker v. Graniteville Co., 197 S.C. 21,14 S.E.2d 367; Crocker v. Life Insurance Company of Virginia,183 S.C. 439, 191 S.E. 312.
There is another aspect of the matter that is worthy of mention in connection with the claim of aggravation. It is indisputable under the evidence that the mass or tumor existed long prior to the Claimant's accident, and all the Doctors agree that where such a mass or tumor exists in this location, it absolutely should be removed to prevent the possibility of the development of cancer. Therefore, even if the accident aggravated the tumor somewhat, it was not the aggravation which required the removal of the testicle, but rather the pre-existence of the tumor. The theory of aggravation under the decisions clearly shows that that principle is applicable to those situations where there is a dormant condition which has produced no disability, but which becomes disabling by reason of the aggravating injury. Those principles and that theory do not seem to me to apply to a claim for disfigurement resulting from the removal of a testicle which should have been removed to avoid *Page 139 
malignancy, whether there had ever been any injury or not. This seems consistent with the doctrine of proximate cause, a doctrine apparently essentially identical with what is called causal relationship under compensation law in the consideration of such a question as that here involved.
What has been said demonstrates that there can be no award for the removal of the testicle for want of causal relationship, and it only remains to inquire whether the limp affords a basis for an award for disfigurement. Of course, if the limp were compensable, but the removal of the testicle were not, then it would become necessary to remand the case to the Commission to fix the award for the limp only without any award for the loss of the testicle. See Shillinglaw v.Springs Cotton Mills, 209 S.C. 379, 40 S.E.2d 502. But award for disfigurement on account of the limp is not sustainable here for two reasons. In the first place, the condition which is said to cause the limp would not appear to be permanent, and permanency is an essential part of compensable disfigurement. Dr. Able testified that there were no residual effects from operation, but, in that respect, the testimony is conflicting because Dr. Tarbox testified that there was some effect remaining at the time he gave his testimony. But it is obvious from Dr. Tarbox's testimony that the condition he found was not permanent. In that connection he says:
"Sometimes after the removal of a testicle you do have more tenderness due to the effect that it has on the spermatic circulation and the spermatic cord, and also you do get some traumatism to those parts which would increase the discomfort and feeling of weakness and pain in you that you would not find regularly in a simple herniatomy" —
"In other words, it just takes a little time for those removals to have the tenderness that results from the operation to clear up" —
"In other words, nothing fundamentally wrong, but it just takes time." *Page 140 
The second reason why the limp may not be made the basis of an award for disfigurement is that the only evidence as to the cause of it is that the condition which caused it was the result of the removal of the testicle, and not the repair of the hernia, and, the removal of the testicle having been found not to be causally connected with the injury, the consequent limp resulting from the removal of the testicle is likewise not compensable. There is disagreement between the Doctors as to whether the Claimant really has any residual bad effects at all, but with such a conflict, the Court has no jurisdiction to interfere with a finding of fact. However, the physician who testified that there were after effects (Dr. Tarbox) unquestionably attributed these after effects to the removal of the testicle and not the repair of the hernia. He said that so far as the hernia operation itself is concerned, it appeared to be a good clean healed hernia operation, and that so far as the hernia is concerned, it is well repaired. The testimony of Dr. Tarbox quoted just above demonstrates beyond question that he attributes the condition which causes the pain and discomfort to the removal of the testicle. Therefore, the limp, resulting from the removal of the testicle, is not more compensable than the removal of the testicle itself.
Since the hernia, which is the condition causally resulting from the injury, has been well and completely repaired, and the other condition is not compensable, it follows necessarily that the Defendants, in furnishing the medical and surgical attention necessary to repair the hernia, have discharged their obligation for medical and surgical attention, and are not liable for any other such attention.
January 3, 1949.
The respondents raise the issue that the exceptions of the appellant do not comply with Section 6, Rule 4, of the Rules of this Court. However, since this *Page 141 
Court is in accord with the holding of the learned Circuit Judge that there is no causal connection shown in the record between the injury sustained by the appellant and the condition for which the disfigurement award was made by the Industrial Commission, we will not dismiss the appeal, but direct that the Order of Judge Sease be reported.
It is unnecessary to decide the other "fundamental question" in this case, reference to which was made in the reported Order.
Affirmed.