16131

WOODSON v. KENDALL MILLS *ET AL.*
(49 S. E. (2d) 597)

*Messrs. Watkins & Watkins,* of Anderson, *for Appellants,*

September 27, 1948.

FISHBURNE, Justice.

This appeal is from an order of the lower court affirming an award of the South Carolina Industrial Commission in favor of the respondent, John D. Woodson.

The claimant, an employee of Kendall Mills at Pelzer, suffered an injury in the lower side of his chest on September 11, 1945, arising out of and in the course of his employment. He was paid by the employer temporary total disability from that day until November 16, 1945, at which time the employer ceased paying on the ground that his resulting disability had no causal connection with the accidental injury. Claim was thereafter filed with the Commission for compensation for all time lost by claimant from November 16, 1945, to August 14, 1946, the day on which he returned to work.

The sole question presented for our consideration by the employer and its insurance carrier is whether there is any competent testimony to justify the conclusion of the Commission that there was a causal connection between the accident admittedly sustained by the claimant and the continued pain and fever which followed.

Claimant had been in the employ of Kendall Mills about two years prior to his injury, as an elevator tender. On September 11, 1945, he was engaged in an attempt to dump a box of threaded quills into the quill chute. The box was about three feet long and two feet wide, and weighed about 200 pounds. He reached down and lifted one end of the box and got it halfway up when he was stricken with a sharp pain in the lower left chest. He immediately reported the accident to his superior and was told to see Dr. Goodlette at Pelzer. Claimant was taken in an automobile to the doctor's office, where after an examination Dr. Goodlette discovered an injury or tenderness over the eighth rib in the anterior axillary line. He diagnosed the trouble as a "muscle spasm" or a pulled muscle. The side and chest were taped and claimant was given certain capsules to take, and advised to apply hot water applications and use an electric pad over the injured place at night.

Claimant returned to his work at the mill the next day, and was assigned much lighter employment, which he was

able to perform for about two weeks. During this period he saw Dr. Goodlette at his office practically every day. A few days after the injury was sustained, claimant began to run a fever. This fever, accompanied by an aggravation of his pain, continuing day after day, forced him to discontinue his work. Dr. Goodlette, desiring that a thorough diagnosis be made, sent him to the Greenville Hospital for examination by Dr. Bates and Dr. Cashwell on October 4th, approximately three weeks after the day of the accident.

He spent several periods in the Greenville Hospital, where he was admitted and discharged four different times. The first period was from October 4th to October 29th; the second from October 21st to December 17th; his third stay was from December 29th to January 7, 1946; and his last hospitalization extended from February 13th to February 15, 1946. During the intervening periods he was attended by Dr. Goodlette at the home of his parents on their farm about six miles from Pelzer. Throughout this entire time, the testimony shows—his and the doctor's—that he suffered constant pain and ran a high intermittent fever. The hospital records show the continuous administration of morphine and sedatives to assuage his pain.

The x-ray examination of the chest showed no disease of the lungs or bones, and Dr. Cashwell stated that an x-ray would not show a torn muscle such as claimant suffered from. The Greenville doctors stated that they could arrive at no satisfactory diagnosis. They found colon bacilli in the urinary tract, but Dr. Wilkinson who was called in, discounted this as being a derivative source of the fever. Dr. Cashwell thought that the presence of the bacilli might be its cause. The medical experts gave it as their definite opinion that there was no causal connection between the continued fever and the accidental injury. Despite this opinion, while claimant was in the hospital at Greenville, they continued hot applications to his chest in order to relieve the soreness and tenderness present in the intercostal area

of the eighth rib, and constantly gave morphine and sedatives to relieve the pain in the same spot. Dr. Cashwell when asked whether or not he would attribute the fever and illness to a sprain such as claimant had suffered, replied: "No, I wouldn't attribute any fever to the sprain that he had for this reason: The fact that the man was able to get up and be about and walk around, and I have never seen a sprain that was serious enough to cause fever that would still allow a man to be up ambulatory and be around and maybe work a while."

Dr. Goodlette, the local Pelzer physician, said that from time to time when he was called to the home of the claimant, he would find him with an acute pain in the left side, and he continued to direct the use of hot applications for soreness and tenderness. The physician was asked on cross examination:

"Q. Hot applications, and so far as your experience is concerned—what you know about this case you don't know of anything that caused his complaint of fever and pain other than the pulled muscle that you found there first? A. Of my own knowledge, no; but from the report I received —* * *"

In his testimony, Dr. Wilkinson said that the obscure infection causing fever which the doctors were unable to diagnose, might have its origin in the fact that the claimant had been sick two or three times during the years 1944 and 1945, prior to the injury.

The claimant, a young man nineteen years of age, was born and reared on a farm six miles from Pelzer, and commuted to his work at Kendall Mills in the town of Pelzer. The records of the employer show that he was absent from work about seventy days in 1944 and for about forty days in 1945, prior to his injury on September 11, 1945. Claimant testified that sometimes he did not report for work because of personal illness and that at other times he stayed

at home to assist his father on the farm. He said that in 1944 or 1945 he had an attack of measles, and was indisposed for three weeks or longer. At another time he had influenza and was at home about two weeks on account of this. He went on to explain that sometimes he remained at home to help on the farm because labor was scarce; that his father became ill during this period and his illness lasted about a month. Claimant was the only child at home and he stayed there to look after his mother and the farm during his father's illness. Some time thereafter his mother was stabbed by a highway robber, which disabled her for over a month, and claimant remained away from work in the mill the greater part of her illness.

With reference to his personal illnesses prior to his accidental injury, claimant stated that he had never experienced any pain in his chest; that he felt the sudden sharp pain at the time he attempted to lift the heavy box of quills. Claimant and his father testified that Dr. Goodlette, the local attending physician, told them more than once that claimant's trouble was due to a pulled muscle and that he did not care what the Greenville doctors said to the contrary.

In our opinion, the record contains competent testimony to sustain the award of the Commission that claimant's disability was causally connected with his accidental injury. While it is true that Dr. Wilkinson thought that the obscure infection might have been due to the measles and influenza suffered by the claimant prior to the injury, the circumstantial evidence in this case outweighs any such surmise. The sharp pain in claimant's left side was coincident with the strain of lifting the heavy box of quills, and this injury was diagnosed by Dr. Goodlette as being due to pulled muscle. Within four or five days fever commenced, and continued intermittently for over four months, with no cessation of pain. And the hospital records show, as stated, that he was given morphine over a long period of time. None of the Greenville doctors minimized

his serious illness, but they expressed the opinion that the fever had nothing to do with the injury and pain in the left side. They testified that the fever was caused by an obscure infection, so obscure that they could not definitely determine its origin. Dr. Goodlette said in his quoted testimony that he knew of nothing that could cause the fever and pain other than the pulled muscle. The Commission evidently reached the same conclusion.

We held in *Ferguson v. State Highway Dept.*, 197 S. C. 520, 15 S. E. (2d) 775, 777:

"Proof that the claimant sustained an injury and that it arose out of and in the course of employment may be established by circumstantial as well as by direct evidence where the circumstances surrounding the occurrence of the injury are such as to lead an unprejudiced mind reasonably to infer that it was caused by accident; evidence need not negative all other possible causes of resultant injury in compensation proceedings. *Jeffers v. Manetta Mills,* 190 S. C. 435, 3 S. E. (2d) 489. We think the award was based upon evidence and logical inferences therefrom, and that it did not rest simply upon surmise or conjecture."

And to the same effect see *Brewer v. Charleston Shipbuilding & Drydock Co.,* 212 S. C. 43, 46 S. E. (2d) 173; *Holly v. Spartan Grain & Mill Co.,* 210 S. C. 183. 42 S. E. (2d) 59; *Ballenger v. Southern Worsted Corp.,* 209 S. C. 463, 40 S. E. (2d) 681; and *Cokeley v. Robert Lee, Inc.,* 197 S. C. 157, 14 S. E. (2d) 889.

In our opinion, claimant's disability was so naturally and directly connected with the accident, as shown by the evidence, that proof of causal connection does not depend upon the expert evidence.

Judgment affirmed.

BAKER, C.J., and STUKES, TAYLOR, and OXNER, JJ., concur.