### 16226

#### WHITE v. CAROLINA POWER & LIGHT CO.

(53 S. E. (2d) 872)

26

*Mr. A. Y. Arledge,* of Raleigh, N. C., *and Messrs. Will-cox, Hardee, Houck & Palmer,* of Florence, *for Appellant,*

*Messrs. George D. Levy and A. S. Merrimon,* of Sumter, *for Respondent,*

June 2, 1949.

TAYLOR, Justice.

Respondent contends that Johnnie White, an employee of the appellant, received an injury on January 13, 1947, which arose out of and in the course of his employment with the

Carolina Power and Light Company, and that Johnnie White died as a result of such injury April 21, 1947.

The said Carolina Power & Light Company operated under the Workmen's Compensation Act, Code 1942, Sec. 7035-1 *et seq.* Hearings were held before Commissioner W. Raymond Johnson, who found that deceased sustained the alleged injury by accident arising out of and in the course of his employment which resulted in his death and made an award in favor of the plaintiff, which was sustained by the whole commission.

Appellant then appealed to the Court of Common Pleas of Florence County which resulted in an order dated August 21, 1948, overruling all exceptions and confirming the award.

Appellant now comes to this court upon exceptions which, in our opinion raised the sole question of whether or not the Circuit Judge committed error in holding that there was competent evidence to sustain the findings of the single commissioner and the whole commission, that the deceased suffered an accident arising out of and in the course of his employment which resulted in his death.

"In reviewing this case on appeal, this Court is of course cognizant of the well founded rule of law that the Industrial Commission being the fact-finding body and this Court and the Circuit Court both being appellate Courts in workmen's compensation matters, this and the Circuit Courts can only review the facts to determine whether or not there is any competent evidence to support the findings of the fact-finding body. If there is, the Courts are without power to pass upon the force and effect of such evidence. An award may of course be reversed if there is an absence of any competent evidence to support it, but in Workmen's Compensation cases the Courts are not the triers of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the Industrial Commission its findings are conclusive in the absence of fraud and neither this Court nor the Court of

Common Pleas is at liberty to interfere with them. *Anderson v. Campbell Tile Co.,* 202 S. C. 54, 24 S. E. (2d) 104; *Crawford et al. v. Town of Winnsboro et al.,* 205 S. C. 72, 30 S. E. (2d) 841; *Lanford v. Clinton Cotton Mills,* 204 S. C. 423, 30 S. E. (2d) 36; *Strawhorn v. J. A. Chapman Const. Co.,* 202 S. C. 43, 24 S. E. (2d) 116; *Cokeley v. Robert Lee, Inc.,* 197 S. C. 157, 14 S. E. (2d) 889; *Shehane v. Springs Cotton Mills,* 206 S. C. 334, 34 S. E. (2d) 180." *Green v. Grinnell Co.,* 213 S. C. 116, 48 S. E. (2d) 644, 647.

At the time of the injury deceased had been working for the appellant for approximately one and a half years, doing the same type of heavy work he was engaged in when the injury occurred. All evidence pointed to him being strong and able-bodied with the exception that on two occasions he had complained to the foreman of having pains in the stomach. On the occasion in question deceased and a number of men were loading poles thirty-five feet long and weighing from seven to eight hundred pounds each, onto appellant's truck or trailer on their premises at Florence, S. C., when one of the poles slipped and most of its weight was thrown on the deceased either striking him in the side or causing him to suffer a severe strain by additional weight which he was forced to bear. He continued on the job the rest of that day although in pain but was unable to return to work afterwards.

He was treated in his home for several days by Dr. G. F. Reeves, who on January 18, 1947, had him admitted to the McLeod Infirmary at Florence, S. C., where he was treated by Dr. C. A. Kinney. He was dismissed from the hospital April 11, for the purpose of returning home. He then went to the home of relatives in Sumter, S. C., where he was treated by Dr. H. A. Davis who advised immediate hospitalization and caused him to be placed in the Tuomey Hospital in Sumter. Dr. Ragsdale Hewitt being then called into the case continued to treat the patient along with Dr. Davis until he died April 21, 1947.

Appellant filed its written report of the injury with the South Carolina Industrial Commission as required by the Workmen's Compensation Act in which it stated that deceased at the time of suffering the injury was "lifting pole into trailer; pole started rolling and White took most of the load." It further stated that White could not have prevented the accident under the conditions. Appellant further admitted that White was disabled by the injury and that they entered into an agreement with him for temporary total disability. All medical and hospital bills were paid by the appellant.

There is some evidence that the pole struck the deceased in the side and some that he suffered a severe strain, however, this is of no consequence as will be hereafter seen by reference to the testimony.

A post mortem was performed by Dr. Hewitt and Dr. Davis, four to six hours after death. Dr. Hewitt testified that the autopsy disclosed that deceased had an ulcer of the cecum, the first part of the large intestine or colon, which had ruptured causing peritonitis and infection which drained into the liver, resulting in multiple abscesses of the liver ranging in size from the size of a man's fist to the size of an egg, which produced death; that either a severe strain or blow would have caused the rupture of the ulcer and the conditions found, and he expressed the opinion that the ulcer pre-existed and that if the deceased was hit with the pole or sustained a strain that the blow or strain caused the rupture.

Dr. Davis testified that the liver condition found to exist resulted from the rupture of the ulcer; that either a blow in the side or a severe strain would have caused the rupture, and it was his opinion that if the ulcer previously existed and the deceased sustained a blow to the abdomen or a severe strain it caused the rupture and that the rupture occurred at that time.

Dr. Kinney who began treating the deceased shortly after the injury testified that deceased suffered from a strain with the rupture of a blood vessel causing a large hematoma—a collection of blood under the skin, and that such injury could have caused the liver to abscess enough to produce death.

Dr. Reeves who also treated him immediately after the injury testified that the hematoma could have and probably resulted from the strain if deceased had suffered a strain or that a blow could have caused such a condition. He also testified that a blow could cause the rupture of the cecum. All doctors agreeing that what actually produced death was a ruptured ulcer.

Appellant's contention is that the finding that deceased had the pre-existing ulcer which was ruptured by a blow or strain is without evidentiary support. Doctors Davis, Hewitt and Reeves testified that such an ulcer does not come on suddenly but develops over considerable period of time, that is a slow growing process and gradually weakens the intestinal walls.

Dr. Davis further testified:

"Q. If a man had a pre-existing ulcer and was subjected to an unusual or severe strain such as having the major portion of a large telegraph pole dropped on him or requiring him to drop that weight, would a strain of that nature in your opinion would that not have been able to produce and would produce a rupture of the cecum? A. Provided the ulcer was there previously. Q. If the ulcer was there previously and a rupture ensued, the condition you described would result from that condition and the rupture? A. That is right."

"Q. You found this man did have an ulcer? A. He did.

"Q. And whatever may have been its origin or whatever may have caused the ulcer, I believe you testified that ulcers could be caused by a number of different things, whatever may have caused it, I believe you testified that having it, that if the deceased suffered a severe blow in the abdomen over the ulcer or sustained a very severe strain such as having

most of the weight of a large telephone pole fall on him and undertaking to lift it, that either of those things could result in the bursting of that ulcer? A. I did."

"The Court: The testimony, is as I recall the other hearing—it has been a good while back, that it happened in the morning part of the day and he worked the balance of the day and never reported back for work and went to the hospital three or four days later.

"A. Regardless of that I believe a blow to the abdomen could or would cause his rupture if the gut prior to that time was normal. If the gut had a previous existing ulcer and the man exerted a heavy strain in any form, it ruptured at that time.

"Q. That is your opinion? A. Yes, sir."

Dr. Hewitt testified as follows:

"Q. As the result of the blow or strain the condition you found was brought about and he died. What would you say in your professional opinion was the cause of his death? A. The cause of his death was multiple abscesses of the liver and I think it resulted from an ulcer of the colon. With the history he gave, assuming the ulcer ruptured, I would say he had a pre-existing ulcer and if he was hit with a pole or strained himself I believe it caused the rupture of the ulcer.

"Q. It could have resulted from either condition? A. Yes, sir."

"Q. If this man had a pre-existing ulcer which caused perforation of the cecum he could have ultimately suffered death unless the situation was corrected by surgery and the infection removed? A. No, sir; not necessarily.

"Q. It would be possible for him to throw it off? A. It would heal spontaneously.

"Q. Normally a perforation of the cecum unattended to within a reasonably limited time would set up peritonitis, wouldn't it? A. Yes, sir."

Appellant contends strenuously that there is no evidence that deceased had a pre-existing ulcer at the time he sus-

tained the injury and relies upon *Radcliffe v. Southern Aviation School,* 209 S. C. 411, 40 S. E. (2d) 626, 629; and *Mack v. Branch No. 12 Post Exchange,* 207 S. C. 258, 35 S. E. (2d) 838. We, however, are unable to agree with this contention as we are of the opinion that there is sufficient evidence in the record to warrant the Commission's findings that the ulcer was a pre-existing one and that the rupture was caused by a blow or strain at the time in question which in time set up an ulcerous condition of the liver resulting in the employee's death.

It is quite true that *post hoc* does not always mean *propter hoc.* Nevertheless, where an accident causing an injury is followed at once by an illness which continues until death ensues, this constitutes a chain of circumstances of probative value, tending to show that death resulted proximately from the accident, or that it was at least accelerated thereby, which as a matter of law is sufficient. And there is a collateral circumstance also supporting such a conclusion, to wit, that the employee has been engaged in this arduous employment for a period of about twenty month, and there is no evidence of his ever having been laid off on account of any illness, although his foreman, Mr. Hanna, testified that he made some complaint to him once or twice to the effect "that his stomach hurt him"; and it might reasonably be inferred that such a condition would have been at least aggravated by a severe strain.

Circumstantial evidence has as much probative value in workmen's compensation cases as in any other class of cases, and the sequence of events is sometimes very convincing. Horowitz on Workmen's Compensation, 151. The case of *Holly v. Spartan Grain & Mill Co.,* 210 S. C. 183, 42 S. E. (2d) 59, 62, is also quite in point and very illuminating, quoting:

"We find here, according to the record, a man who prior to his accidental fall, appeared to be perfectly healthy, with a hearty appetite, who had never lost any time from his work

in over three years; nor had he complained of any illness. Nor had he ever consulted a doctor for any cause. He suffered a fall and from that time on is incapacitated; grows progressively worse, and dies. The lay mind under such circumstances, in view of the medical testimony, can reasonably arrive at no other conclusion than that reached by the Commission and the circuit court—that the Bright's Disease was aggravated and accelerated by the accidental injury. * * *

"Proof that the deceased sustained an injury and that it arose out of and in the course of his employment may be established by circumstantial as well as by direct evidence, where the circumstances surrounding the occurrence of the injury are such as to lead an unprejudiced mind reasonably to infer that it was caused by accident; evidence need not negative all other causes of resultant injury in compensation proceedings. *Ferguson v. State Highway Department*, 197 S. C. 520, 15 S. E. (2d) 775."

For the foregoing reasons we are of the opinion that all exceptions should be dismissed and it is so ordered.

Judgment affirmed.

Baker, C. J., and Fishburne, Stukes and Oxner, JJ., concur.