16363

HEWITT v. CHERAW COTTON MILLS *ET AL.*
(59 S. E. (2d) 712)

Messrs. *J. Arthur Knight*, of Chesterfield, *and Wise, Whaley & McCutchen*, of Columbia, *for Appellants,*

Messrs. *J. E. Dudley*, of Bennettsville, *and Henry H. Edens*, of Columbia, *for Respondent,*

May 31, 1950.

TAYLOR, Justice.

On or about October 8, 1947, respondent sustained an injury which arose out of and in the course of his employment by appellant, Cheraw Cotton Mills. The other appellant, United States Casualty Insurance Company, is the insurer under the provisions of the South Carolina Workmen's Compensation Act, Code 1942 § 7035-1 *et seq.* As a result of this injury, respondent was paid temporary disability from the date of injury until January 28, 1948, at which time appellants ceased making payments upon the grounds that such disability as appellant was then suffering had no casual connection with the injury.

A claim was thereafter filed with the South Carolina Industrial Commission which resulted in an award by the Hearing Commissioner, granting compensation to respondent. The Full Commission affirmed the award of the Single Commissioner, and an appeal was taken to the Common Pleas Court for Chesterfield County, where Honorable J. Woodrow Lewis affirmed the award of the Commission.

Appellants now come to this Court upon exceptions, which pose the question of whether or not there is any evidence of probative value from which the Industrial Commission could properly conclude that respondent's disability extended beyond January 28, 1948.

"In reviewing this case on appeal, this Court is of course cognizant of the well-founded rule of law that the Industrial Commission being the fact-finding body and this Court and the Circuit Court both being appellate Courts in workmen's compensation matters, this and the Circuit Courts can only review the facts to determine whether or not there is any competent evidence to support the findings of the fact-finding body. If there is, the Courts are without power to pass upon the force and effect of such evidence. An award may of course be reversed if there is an absence of any competent evidence to support it, but in Workmen's Compensation cases the Courts are not the triers of facts. If the facts proved are capable as a matter of law of sustaining the inference of fact drawn from them by the Industrial Commission, its findings are conclusive in the absence of fraud and neither this Court nor the Court of Common Pleas is at liberty to interfere with them." *Schrader v. Monarch Mills,* 215 S. C. 357, 55 S. E. (2d) 285, 286.

Dr. Boyd, the only physician testifying, stated that his conclusions at the time respondent first came to him were that there "were no definite signs or symptoms at this time to warrant a diagnosis of a ruptured disc or an instability. The tenderness and muscle spasm in the right side are the result of myositis, traumatic. No surgery indicated. Would advise hospitalization for two weeks with physiotherapy and exercises. At this time there is a definite disability, which will clear up under rest, physiotherapy and corrective exercises. It is possible that a brace might be needed at a later date."

Later, Mr. Hewitt returned to him and stated that he still had pain in his back. At that time, he was admitted to

the hospital and remained several days, suffering from muscle spasm. At the time of dismissal he had been measured for a brace and stated then that he felt perfectly well and was comfortable. Some time later, he returned again, wearing his brace and complaining of pain in the flank. Not being able to evaluate this pain, Dr. Boyd had him *x*-rayed and found no evidence of disease or injury to the bone.

On or about the first day of April, respondent reported to the doctor again that he still had pain in his back and was unable to hold himself erect or bend over further, causing him to remain in a stooped position. The brace was adjusted and the doctor states that, in his opinion, the difficulty in his back is purely postural and that he does not think there is any disability in the spine that would warrant his being bent over when he sits and walks. On the 28th of April, the doctor saw him again and found that he continued to sit, stand, and walk in a stooped position, and that he was still suffering from pain but not severe enough to keep him from working.

Dr. Boyd further testified that he is confident that respondent suffered no injury to the spine itself. Upon cross examination, the following testimony appears:

"Q. What is causing his pain? A. Do you want me to tell you frankly? I don't know whether he has got any pain. There isn't any way for me or you or anybody else to say whether that man has pain, and yet when he tells me that he had one spot that hurt him, and when I examined his back I would go around it and come back to that same spot and he didn't have any pain. The man, when he first came in had a definite spasm of the muscle in his spine, and I think he had a traumatic myositis. His muscles were damaged by whatever accident he had there, that would give him a painful situation, but it does not produce a permanent disability. I am confident that there is no disability referable to his spine whatsoever.

"Q. It is generally accepted in the medical profession that if a man does complain of pain in his back after having had

an injury, that you have to assume he is telling the truth? A. I take his word, I presume. I listen to him, yes, but they all don't do it.

"Q. There is no way to show that? A. There is no way for me to evaluate that. You tell me you got pain in your shoulder, and there isn't any way for me to say you don't have pain.

"Q. You take the patient's word? A. I have to take his word for that, but I could find nothing that, in my opinion, would be provocative of pain.

"Q. The only thing the *x*-rays would show would be a bone injury? A. Bony injury, yes."

Dr. Boyd further stated that, in his opinion, such pain as claimant has does not come from his injury. When he first saw him, he was suffering from a traumatic myositis, but that that is no basis for the pain which respondent says he now suffers.

Respondent stated that, at the time he suffered the injury, he was working as a doffer and that the pain was coincident with the injury and that since that time he has suffered almost constant pain, so much so that he has been unable to perform any sort of work and takes Stanback powders almost constantly in order to relieve the pain, that the reason of his stooped posture is that he is unable to sit or stand straight without severe pain in the small of his back, that he has been and is still unable to do any work whatever.

Mr. C. C. Hewitt, the claimant's father, testified that since the injury claimant has been and is unable to do any type of work, that he can neither straighten up nor stoop further than he is, that he suffers severe pain, and that claimant takes approximately twelve doses of Stanback each day in order to be able to sit up.

In the very similar case of *Woodson v. Kendall Mills,* 213 S. C. 395, 49 S. E. (2d) 597, 599, this Court said: "Proof that the claimant sustained an injury and that it

arose out of and in the course of employment may be established by circumstantial as well as by direct evidence where the circumstances surrounding the occurrence of the injury are such as to lead an unprejudiced mind reasonably to infer that it was caused by accident; evidence need not negative all other possible causes of resultant injury in compensation proceedings. *Jeffers v. Manetta Mills,* 190 S. C. 435, 3 S. E. (2d) 489. We think the award was based upon evidence and logical inferences therefrom, and that it did not rest simply upon surmise or conjecture."

In the case of *Baker v. Graniteville Co.,* 197 S. C. 21, 14 S. E. (2d) 367, 370, this Court stated: "The testimony of the physicians as to the want of any causal connection between the traumatic injury and the erysipelas from which Baker died was not binding upon the Industrial Commission. The opinion of an expert witness is intended to aid the Commission in coming to a correct conclusion, and the weight and credit to be given such testimony was a matter, of course, to be determined by the Commission. But when the Commission in effect disregards such expert testimony it must perforce find other competent evidence in the record upon which to base its findings. The evidence given by the physicians is that the trauma suffered by Baker was not a factor in accelerating or aggravating the infection and septicemia which was virulent in Baker's blood stream when he received the blow. And there is no other evidence in the record except such as is based upon surmise and conjecture, upon which the findings of the Commission can be planted."

Appellant relies upon the case of *Ashley v. S. C. Highway Dept.,* 213 S. C. 354, 49 S. E. (2d) 505, but an analysis of that case shows that a definite cause was arrived at as the source of pain which was other than the injury complained of, while here no cause has been found. The testimony reveals only that the beginning of the pain was coincident with the injury and that it has continued in the same area since the injury. "If, under the evidence, there was doubt of causal connection or whether decedent's death was ac-

celerated by accidental injury, the doubt should be resolved in favor of compensability, and the award allowed to stand. But where there is no evidence of substance to make issue with the unanimous medical opinion, * * * it becomes the duty of this Court to reverse the award. The lack of substantial conflict in the testimony renders the question of causal connection or acceleration of death, which is ordinarily one of fact for the Industrial Commission, a question of law to be determined by the Court." *Burgess v. Belton Mills,* 215 S. C. 364, 55 S. E. (2d) 292, 296.

Dr. Boyd also testified that if the respondent contends that he has pain, then his statement must be accepted as true. We are of the opinion that this, considered in conjunction with the testimony of the claimant and his father, heretofore referred to, and the fact that the pain commenced with the injury and has continued since and the logical inferences to be drawn therefrom, is sufficient to support the findings and award of the Industrial Commission, and that the Order appealed from should be affirmed, and it is so ordered.

FISHBURNE, STUKES and OXNER, JJ., and A. L. GASTON, A. A. J., concur.

BAKER, C. J., not participating.