16474

BROUGHTON · v. SOUTH CAROLINA GAME AND FISH DEPARTMENT *ET AL.*

(64 S. E. (2d) 152)

*Messrs. John M. Daniel, Attorney General, and R. Hoke Robinson* and *Daniel R. McLeod, Assistant Attorneys General,* of Columbia, *for Appellants,*

*Messrs. Nash & Wilson,* of Sumter, *for Respondent,*

March 12, 1951.

FISHBURNE, Justice.

This appeal is from an order of the circuit court affirming an award of the South Carolina Industrial Commission in favor of the respondent, Mrs. Lila W. Broughton.

The claimant, who is the widow and dependent of Perry A. Broughton, filed her claim under the Workmen's Compensation Act, Code 1942, § 7035-1 *et seq.,* in which it was alleged that her husband, a game warden of Sumter County, was drowned while in the discharge of his duty and that his death arose out of and in the course of his employment.

It is conceded that the death of Broughton was accidental. The sole question presented by the appeal is whether his death arose out of and in the course of his employment.

The late Perry A. Broughton resided in Sumter County, and had been a duly commissioned game warden of that county from 1941 to the date of his death. On the date of the accident, March 14, 1949, the deceased and M. S. Boykin, a long time friend, and who was a former president of the Sumter Game and Fish Association, by mutual plan and agreement, went on a fishing excursion to the West branch of the Cooper River, in Berkeley County, 70 of 75 miles from Sumter County. The parties hereto draw different inferences from the testimony as to whether or not this expedition was solely for the purpose of fishing. We will advert to this later on.

As a game warden of Sumter County, Broughton had at his disposal a boat and motor which was furnished him for his official duties, either by the State Game and Fish Department or by the Sumter County Game and Fish Association. Boykin and Broughton loaded the boat and motor onto the automobile of the latter and proceeded to their destination in Berkeley County, which is not a county adjoining Sumter but is separated therefrom by two other counties, namely, Clarendon and Williamsburg. In the course of fishing that afternoon, their boat capsized and Broughton was drowned. His body was not recovered until December 18, 1949. At that time his badge as a game warden was attached to his shirt, and his summons book was in his pocket. He had taken with him a small pistol, which he customarily kept in his fishing tackle box, but had left at home the pistol which he usually carried in the performance of his duties as a game warden.

Aside from these circumstances, which are strongly emphasized by counsel for respondent as tending to show by circumstantial evidence that the deceased when accidentially drowned was in the actual performance of his official duties, we have the testimony of Mr. Boykin, who was his companion and the sole eye witness of his death. On direct examination, Mr. Boykin, who testified for the claimant, stated

that he had been fishing with Broughton a number of times, and that he had seen him apprehend law violators, but that they had never gone to the Cooper River in Berkeley County, —75 miles away,—in the performance of official duties. He said that a game warden was sometimes called upon to do work outside of his own county; but neither Boykin nor any other witness for claimant testified that Broughton had ever been requested or directed to visit any other area in the performance of his duty except in some county adjoining Sumter. It is conceded, however, that he had state-wide jurisdiction.

The issue before the Industrial Commission was to determine whether or not on this particular afternoon of March 14, 1949, there was any substantial evidence which would support a finding that Broughton was engaged in the performance of his official duties as a game warden.

In our opinion, Boykin's testimony settles that question. He stated that he had hunted and fished with Broughton many times, but that on this particular occasion they went to the Cooper River, 75 miles distant from Sumter, solely for the purpose of fishing; that it was a mutually planned affair, and that they quite frequently used the Game and Fish Department's boat and motor. The following questions and answers are pertinent and revealing:

"Q. On this particular day, you went for the sole reason for fishing? You had no report of any violation going on. You left here for full intention of going on a fishing trip, is that correct? A. Yes, sir. So far as I was concerned.

\* \* \*

"Q. On this occasion you didn't go out to apprehend a violator, did you? A. We were simply going on a fishing trip."

A claimant who asserts the right to compensation carries the burden of establishing the necessary facts to entitle him to such compensation. The evidence will ordinarily be regarded as sufficient where the circum-

stances shown tend to establish the ultimate facts in issue and provide a basis from which they reasonably may be inferred. An award cannot, however, be based upon mere possibilities, probabilities, surmises or conjectures. *Hines v. Pacific Mills,* 214 S. C. 125, 51 S. E. (2d) 383; *Sligh v. Newberry Elect. Co-op.,* 216 S. C. 401, 58 S. E. (2d) 675; *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879; *Rudd v. Fairforest Finishing Co.,* 189 S. C. 188, 200 S. E. 727.

■ Viewed in the light of the foregoing well established principles, we think it clear that the findings and conclusions made by the Industrial Commission are without substantial support in the evidence. In addition to the direct, positive and uncontradicted testimony of Mr. Boykin that this fishing trip ot the Cooper River was made solely for the purpose of fishing and not for the purpose of apprehending a violator of the law, we have the testimony of the deputy chief clerk in the office of the State Game Warden. He is the custodian of the records required to be sent in by all game wardens when arrests and cases are made. He stated that the records in that office for the three years preceding the accidental death of Mr. Broughton, show that he had not made a case outside of Sumter County during that period; and that for the fiscal year, 1947-1948, he had made only fourteen cases in Sumter County.

The fact that Mr. Broughton used on this trip to Berkeley County the boat and motor of the Game Department, and that when his body was found he had with him his badge and summons book, is in no sense controlling or conclusive. When we consider these circumstances in the light of Mr. Boykin's testimony, which is to the effect that "we were simply going on a fishing trip," the inference that Broughton might have been engaged upon official business is untenable.

The respondent cities the case of *Owens v. Ocean Forest Club,* 196 S. C. 97, 12 S. E. (2d) 839, 841, where the court stated: "There is a natural presumption, or a presumption of

fact, that one charged with the performance of a duty and injured while performing such duty, or found injured at a place where his duty may have required him to be, is injured in the course of, and as a consequence of, the employment."

But on this record, such presumption cannot be indulged. In the *Owens case,* all of the evidence relating to his death was circumstantial. The facts here do not make out such a case. There is no evidence of any kind that Mr. Broughton's duties required him to be in the Cooper River, 75 miles from Sumter County, where ordinarily he operated. There is evidence in the record that Mr. Broughton had performed some official duties in counties adjacent to his home county of Sumter, but not in Berkeley County, where the accident occurred which resulted in his death. And the uncontroverted testimony of Boykin shows that the trip was made for pleasure alone,—unconnected with any official duty.

A very recent case, *Mims v. Nehi Bottling Co.,* S. C., 63 S. E. (2d) 305, 307, is analogous to the case at bar. Mims met his death in a laundry, and it was held that he had deviated from his duties. The court said: "Appellant further contends that under the broad power and authority to act for his employer that he was following the most direct route to posting the mail and that there is a natural presumption or presumption of fact that one charged with the performance of a duty and injured while performing such duty or found injured at a place where his duty may have required him to be is injured in the course of and as a consequence of the employment, and relies upon *Owens v. Ocean Forest Club, Inc.* [*et al.*], 196 S. C. 97, 12 S. E. (2d) 839; *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879; *Jordan v. Dixie Chevrolet Co.* [218 S. C. 73], 61 S. E. (2d) 654; *Pelfrey v. Oconee County,* 207 S. C. 433, 36 S. E. (2d) 297. In the instant case, there is no showing that deceased was engaged in doing what was necessary to bring the mail to the mailbox or in anywise about the business of the Nehi

Bottling Company when he entered the laundry, and the presumption which had followed him was no longer in existence when he stopped his truck and entered the premises of the laundry for reasons unknown."

In the case of *Hines v. Pacific Mills,* 214 S. C. 125, 51 S. E. (2d) 383, it is stated that where the evidence is all one way or points in only one direction, it must be accepted by the fact-finding body, and cannot be disregarded unless there is competent and substantial evidence to the contrary.

In our opinion, under the testimony in this case, there is no competent evidence upon which the findings of the Industrial Commission can reasonably be based.

Judgment reversed.

STUKES and OXNER, JJ., and L. D. LIDE, Acting Associate Justice, concur.

TAYLOR, J., concurs in result.