17237

IRENE W. LEONARD, MATTIE W. TARLTON and J. TYLER WATSON, Respondents, v. GEORGETOWN COUNTY and SOUTH CAROLINA WORKMEN'S COMPENSATION FUND, Appellants.

(95 S. E. (2d) 777)

*Messrs. T. C. Callison, Attorney General,* and *Julian L. Johnson, Assistant Attorney General,* of Columbia *for Appellants,*

*Herman Stacy Clardy, Esq.,* of Georgetown, *for Respondents,*

December 17, 1956.

TAYLOR, JUSTICE.

This appeal is from an Order of the Circuit Court reversing the findings of fact and conclusions of law of the South Carolina Industrial Commission and ordering that respondents, the next of kin of the deceased Charles Howard Watson, have judgment against appellants for the maximum benefits payable under the South Carolina Workmen's Compensation Act, Code 1952, § 72-1 et seq., and all medical, surgical, hospital and doctors' bills.

Mr. Charles Watson at the time of the accident complained of was foreman of a Georgetown County chain gang and, being unmarried, had no home except at the prison camp. There is testimony to the effect that he considered himself on duty at all times and subject to call at

any time, day or night; that the guards in charge of the prisoners and work at the camp alternated between themselves as to week ends off; and the occasion in question was Mr. Watson's week end free from the camp. He left the camp in the forenoon of November 9, 1952, returned shortly thereafter, and left again in a pick-up truck owned by Georgetown County, using gasoline furnished by Georgetown County. The evidence further reveals that the reason for his absence from camp was wholly personal and in nowise connected with his employment.

Mr. Bob Morris, witness for claimants, testified as follows:

"Q. Mr. Morris, where do you live? A. I live up in Georgetown County about twenty-one miles from here.

"Q. In what section? A. Well, I don't know the township.

"Q. What is the section generally referred to as? A. Carver's Bay.

"Q. Is that the same thing we've been talking about as the Chopee Section? A. Yes, sir.

"Q. On November 9, 1952, did Mr. C. H. Watson visit you? A. Yes, sir, he did.

"Q. What happened at your house that day? A. Mr. Watson came to my place just before dinner and had dinner with me and we walked out to the Miller Road; and there is a low drain right betwixt the road and the house. And he stopped and looked at that; and he said, 'Bob, you need a pipe in here'. He said, 'That water collecting in here is not right.' I told him that was not the worst. We walked on beyond the road and come to another that at certain times in the pasture you can't go through without wading water. This water collects from this county road over here.

"Q. What road? A. Elliott Road; that's the only name I know it by.

"Q. What, if anything, did Mr. Watson say he was going to do. A. He said he was going to get out and see if something couldn't be done—see Mr. Porter and see if he

wouldn't let him put some pipe in there. He stayed around and later on had supper and he left to come back to relieve Mr. Philips, the chain gang guard. I asked him to stay longer but he said he promised to go relieve Mr. Phillips and had to do it.

"Q. What time did he leave your house? A. I would say around 6:00 o'clock or a little after.

"Q. How far is it from your house to where the wreck occurred? A. I would say along about eight miles.

"Q. What kind of vehicle was Mr. Watson driving? A. A pickup.

"Q. Do you know whose? A. It belonged to Georgetown County.

"Mr. Clardy: Your witness."

## Cross Examination

"Q. You had invited Mr. Watson for Sunday dinner with you that day? A. No, sir; he just came there himself.

"Q. You weren't expecting him at all? A. No.

"Q. You didn't even have to put any more water in the soup? A. No, sir.

"Q. And, of course, you invited him for dinner and he accepted, and after dinner you all loafed around and walked out in your lot—for what purpose? A. Just merely walked out there and he saw this place.

"Q. That's the first time he ever noticed it? A. No, he'd noticed it before. You had to notice it because you had to wade water to get across it.

"Q. He had known of that a good long time before? A. I wouldn't say a long time. He had seen it and said he was going to talk to Mr. Porter.

"Q. And he'd told you that before? A. He had, yes; a week or so before.

"Q. He didn't go out there to fix that? A. Well, no.

"Q. It just came to his attention again when you were going out there to look at the stock? A. How's that?

"Q. You all were going out there to look at the stock and he just happened to see it and remembered it again? A. Yes, I guess."

There is no testimony controverting the above, but there is some to the effect that the deceased was subject to call at all times and in case of emergencies did proceed to repair roads or bridges of Georgetown County; but there is no evidence of any such emergency on the date in question.

It is contended by respondents that the use of the County truck, with County fuel was sufficient to bring this case within the exceptions to the going and coming rule. But the fact remains that the deceased's home was the camp itself and that at the time of the tragic accident he was engaged in a purely personal enterprise and cannot be considered as being in the process of going from home to his work or from work to his home.

In *Broughton v. South Carolina Game & Fish Department*, 219 S. C. 50, 64 S. E. (2d) 152, a game warden of Sumter County, Perry A. Broughton, was drowned while fishing in the West branch of Cooper River in Berkeley County. At the time, he was using his employer's boat and motor, his badge as game warden was on his shirt and his summons book in his pocket. While his duties were continuous and his authority Statewide, recovery was denied on the grounds that he was engaged in a purely personal enterprise.

In *Wilson v. City of Darlington*, 229 S. C. 62, 91 S. E. (2d) 714, 715, it was contended that Wilson, a volunteer fireman, was on duty at all times and that burns received from an explosion which occurred while he was working on a boat for his own pleasure were within the provisions of the Workmen's Compensation Act. Benefits were denied; and this Court affirmed the Order of the Circuit Court affirming such findings, stating that "the questions involved were question of fact for the commission which should not be disturbed by the court."

It is hardly necessary to cite authority for the well established principle of law that the Industrial Commission is the fact-finding body, and this Court and

the Circuit Court both being appellate Courts in Workmen's Compensation matters, can only review the facts to determine whether or not there is any competent evidence to support the fact-finding body. If there is, both this Court and the Circuit Court are without power to pass upon the force and effect of such evidence. *Rudd v. Fairforest Finishing Co.*, 189 S. C. 188, 200 S. E. 727; *Ham v. Mullins Lumber Co.*, 193 S. C. 66, 7 S. E. (2d) 712; *Jones v. Anderson Cotton Mills*, 205 S. C. 247, 31 S. E. (2d) 447; *Radcliffe v. Southern Aviation School*, 209 S. C. 411, 40 S. E. (2d) 626; *Whitfield v. Daniel Construction Co.*, 226 S. C. 37, 83 S. E. (2d) 460; *Wilson v. City of Darlington, supra.*

The hearing Commissioner and the Commission as a whole found as a fact that Charles Howard Watson received injuries in an automobile accident on November 9th, 1952, from which he died on December 6, 1952, and that said accident did not arise out of and was not in the course of his employment, neither was it "incidental to or in any wise connected with his employment; but, on the contrary, at the time in question the deceased was about a venture which was purely and entirely personal."

The burden is upon the claimants to prove such facts as will render the injury compensable, within the provision of the Workmen's Compensation Act, and such award must not be based upon surmise or conjecture or speculation. *Spearman v. F. S. Royster Guano Co.*, 188 S. C. 393, 199 S. E. 530; *Cagle v. Judson Mills*, 195 S. C. 346, 11 S. E. (2d) 376; *Radcliffe v. Southern Aviation School, supra; Hines v. Pacific Mills*, 214 S. C. 125, 51 S. E. (2d) 383; *Mims v. Nehi Bottling Co.*, 218 S. C. 513, 63 S. E. (2d) 305; *Broughton v. South Carolina Game & Fish Department, et al., supra.*

There is no merit in respondents' position that the State of South Carolina is estopped from setting up a defense by reason of the Chairman of the County Board of Commissioners for Georgetown County having

admitted liability and said Board paying the salary of deceased from time of injury to time of death. *Baker v. State Highway Department,* 166 S. C. 481, 165 S. E. 197; *Farrow v. City Council of Charleston,* 169 S. C. 373, 168 S. E. 852, 87 A. L. R. 981.

For the foregoing reasons, we are of opinion that the Order appealed from must be set aside and the award reinstated, and it is so ordered. Reversed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.