**17795**

Mrs. Ida PACKER, widow of Walter Ernest Packer, Appellant, v. CORBETT CANNING COMPANY, Inc., and The Travelers Insurance Company, Respondents

(120 S. E. (2d) 398)

Messrs. *Dawes & Dawes,* of Loris, and *Frank McGougan,* of Tabor City, N. C., *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondents,* 

June 6, 1961.

TAYLOR, Chief Justice.

This is a workmen's compensation case wherein claimant appeals to this Court from an order of the Honorable G. Badger Baker, Judge of the Twelfth Judicial Circuit, reversing the order and award of the South Carolina Industrial Commission; and determination of whether there is competent evidence to support the findings of the Industrial Commission will determine the issues before us.

The deceased, Walter E. Packer, an employee of the defendant, Corbett Canning Company, Inc., was found dead at approximately 7 A. M., on the morning of May 7, 1958, at his employer's place of business, lying on his left side with his right hand in his pocket and his left hand inside his overalls over his heart. His duties as a night watchman required him to be on duty from 9:30 P. M. until 6 A. M. The portion of the place of business where deceased was found was described as a shed with a concrete floor without side walls. On the night in question, there had been a severe electrical rainstorm. The floor was wet; and where slight undulations occurred, water had accumulated. When found, deceased was lying with the lower portion of his body in water; and in the same puddle of water, approximately 6 feet from the body, was an electric cord. The cord was attached permanently to a sump pump used for the purpose of filling the boiler. There was no switch on the pump or the cord, but the pump was started by the cord being plugged into an electrical socket located 3 or 4 feet from the floor on a post, approximately 15 feet distant, and stopped by removal of the plug from the socket.

An electrical inspector living in the neighborhood and one of the first on the scene stated that when he arrived he saw the cord lying in the water and investigated to see if it was charged with electricity before approaching the body. He found the cord disconnected at the post with the plug "lying like it was pulled out laying down on—you know laying down on something or other, a box or a tray or something or other." The end of the cord was 3 or 4 feet from the post where the socket was and approximately 12 feet from where the body lay. The cord was introduced into evidence and described as one "like you have on lamps, just a regular lamp cord."

Dr. Ross M. Williamson, who viewed the body before removal, testified:

"Q. Based on the examination you made would you give your opinion as to whether this man died of an electric shock?

\* \* \*

"A. It was my opinion at the time that he did not die from electrocution.

"Q. \* \* \* did you form an opinion at the time as to the cause of his death? A. I did not form an opinion other than that he was not electrocuted. I assumed that it was through—it was natural causes."

Dr. B. B. Andrews, the pathologist, testified:

"A. I examined the body of the deceased. I examined all of the organs. I found that there was a severe arteriosclerosis of the vessels of the heart, that one of these vessels was completely obstructed and that there was a scar in the heart from an infarct of the heart. This was commonly known as a heart attack. That there was congestion of the lungs and that there was edema of the lungs, and it is my opinion that the combination of these factors is the cause of death.

"Q. \* \* \* That the cause of death was what? A. The cause of death is coronary arteriosclerosis with occlusion of

the coronary artery and a myocardial infarction, with acute pulmonary congestion and edema.

"Q. Now, you spoke of an infarct scar? A. Yes, sir.

"Q. What did that indicate? A. It indicated that there had been damage to the heart at some time previous to this, and the scar tissue is the result of the healing of that.

"Q. Would you be able to give as your opinion how long prior to your examination that this first heart attack was? A. I can only say in a general way.

\* \* \*

"A. That it had been more than two weeks.

\* \* \*

"Q. Now, doctor, what did you find in the coronary artery, if anything, that occurred that was to be the immediate cause of his death?

\* \* \*

"A. The heart was—showed evidence of fairly longstanding disease in the form of arteriosclerosis, hardening of the arteries, and a scar from the previous heart attack. The heart was enlarged and there was congestion in the lungs. The combination of these factors resulted in death due to heart failure, in my opinion.

"Q. Now, doctor, did you make a careful examination of his body? A. Yes, sir; I did.

"Q. Did you find anywhere on his body any evidence of any burn or evidence of electric shock? A. No, I didn't.

"Q. Did you find any evidence anywhere in his body or on his body that could have caused his death other than the heart condition? A. No, I did not."

It is by now well established that the burden is upon claimant to prove such facts as will render the injury compensable within the provisions of the Workmen's Compensation Act, Code 1952, § 72-1 *et seq.*, and such award must not be based upon surmise, conjecture or speculation, *Leonard v. Georgetown County,* 230 S. C. 388, 95 S. E. (2d) 777; *Broughton v. South Carolina Game &*

*Fish Department,* 219 S. C. 50, 64 S. E. (2d) 152; *Mims v. Nehi Bottling Co.,* 218 S. C. 513, 63 S. E. (2d) 305; *Brady v. Sacony of St. Matthews,* 232 S. C. 84, 101 S. E. (2d) 50; *Foyler v. Abbott Motor Co.,* 236 S. C. 226, 113 S. E. (2d) 737.

In *Steed v. Mount Pleasant Seafood Company,* 236 S. C. 253, 113 S. E. (2d) 827, 828, this Court stated:

"It is hardly necessary to cite authority for the well established principle of law that the Industrial Commission is the fact-finding body; and this Court and the Circuit Court both being appellate Courts in workmen's compensation matters, can only review the facts to determine whether or not there is any competent evidence to support the fact-finding body. If there is, both this Court and the Circuit Court are without power to pass upon the force and effect of such evidence. *Rudd v. Fairforest Finishing Co.,* 189 S. C. 188, 200 S. E. 727; *Ham v. Mullins Lumber Co.,* 193 S. C. 66, 7 S. E. (2d) 712; *Jones v. Anderson Cotton Mills,* 205 S. C. 247, 31 S. E. (2d) 447; *Radcliffe v. Southern Aviation School,* 209 S. C. 411, 40 S. E. (2d) 626; *Hiers v. Brunson Construction Co.,* 221 S. C. 212, 70 S. E. (2d) 211; *Mason v. Woodside Mills,* 225 S. C. 15, 80 S. E. (2d) 334; *Whitfield v. Daniel Construction Co.,* 226 S. C. 37, 83 S. E. (2d) 460; *Wilson v. City of Darlington,* 229 S. C. 62, 91 S. E. (2d) 714; *Leonard v. Georgetown County,* 230 S. C. 388, 95 S. E. (2d) 777. When there is a conflict in the evidence either of different witnesses or of the same witness, the findings of fact of the Industrial Commission, as triers of fact are conclusive. *Cokeley v. Robert Lee, Inc.,* 197 S. C. 157, 14 S. E. (2d) 889; *Gurley v. Mills Mill,* 225 S. C. 46, 80 S. E. (2d) 745."

There is a natural presumption, or a presumption of fact, that one charged with the performance of a duty and injured while performing such duty, or found injured where his duty required him to be, is injured in the course of, and as a consequence of, his employment.

So where a night watchman is found dead in a place where he may reasonably be expected to be, the natural presumption arises that his death occurred out of and in the course of his employment. *Owens v. Ocean Forest Club,* 196 S. C. 97, 12 S. E. (2d) 839. In the *Owens case,* the deceased was found where his duties reasonably required him to be, with a gunshot wound of the head, and there was other evidence to support the award. The presumption alone was not relied upon to establish the fact of accident.

In instant case, the deceased was found where the performance of his duties required him to be, but his duties as night watchman were in no wise connected with the sump pump which was used to fill the boiler. This duty was performed by a Mr. Hancock, and there is a complete lack of evidence that the cord had been plugged into the socket or that deceased received an electrical shock from any source.

Dr. Andrews testified that 110 volts could be fatal to one in deceased's physical condition, but there is no evidence of shock here, and it was his opinion that this was not the cause of death in instant case.

In *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879, 883, another unwitnessed death case, the deceased was found lying near a machine called a divider, which he operated in the bakery. The machine proved to have developed an electrical short. There, as here, medical testimony was introduced, and this Court said:

" 'Where medical testimony is relied upon to sustain an award of the Industrial Commission it is not sufficient to say that the condition of claimant could possibly have arisen or it would be possible to have resulted from the injury. This court has gone so far as to hold in cases where medical testimony is relied upon that testimony to the effect that it is the witness' opinion that such ailment most probably came from the cause alleged was sufficient to sustain an award by the Industrial Commission. *Ashley v. South Carolina Highway Dept.,* 213 S. C. 354, 49 S. E. (2d) 505;

*Mack v. Branch No. 12 Post Exchange,* 207 S. C. 258, 35 S. E. (2d) 838; *Rivers v. V. P. Loftis Co. et al.,* 214 S. C. 162, 51 S. E. (2d) 510.' "

A presumption may not be availed of to establish the incident of accident, Larson, Workmen's Compensation Law, Sec. 10.33; and we are of opinion that there is no competent evidence to sustain the award, that the order appealed from should be affirmed; and it is so ordered. Affirmed.

OXNER, LEGGE, Moss and LEWIS, JJ., concur.