242 S.C. 477 (1963)
131 S.E.2d 512
J. Putnam KENNEDY, Respondent,
v.
WILLIAMSBURG COUNTY and State Workmen's Compensation Fund, Appellants.
18080
Supreme Court of South Carolina.
June 10, 1963.
*478 Messrs. Daniel R. McLeod, Attorney General, and David Aiken, Assistant Attorney General, of Columbia, for Appellants.
Messrs. Connor & Connor, of Kingstree, for Respondent.
*479 June 10, 1963.
TAYLOR, Chief Justice.
This is a Workmen's Compensation case, wherein defendants appeal from an Order of the Circuit Court affirming an award of the Industrial Commission in favor of claimant.
The plaintiff, J. Putnam Kennedy, was employed by Williamsburg County as a chain gang guard on September 9, 1958, on which date he was attacked by two prisoners, resulting in lacerations and contusions to his head. He was thereby disabled from the date of attack, September 9, 1958, until December 1, 1958, at which time he returned to work for another employer.
On March 30, 1959, he was admitted to the Medical College Hospital, Charleston, South Carolina, and transferred to the South Carolina State Hospital on April 10, 1959, from which he was discharged on a trial basis May 24, 1959. He returned to work with a construction company August 1, 1959, and worked through October 5th of that year. Seven days thereafter, October 12, 1959, he was returned to the State Hospital where he is now confined.
Two hearings were conducted by the Single Commissioner, who found that the claimant was mentally incompetent and permanently and totally disabled as a result of injuries received September 9, 1958, which were sustained by accident arising out of and in the course of claimant's employment. Defendants appealed to the Full Commission, the majority of which affirmed and adopted the award of the Single Commissioner. Defendants next appealed to the Circuit Court and by Order dated February 9, 1962, the *480 Honorable James Hugh McFaddin affirmed the findings of the Full Commission. Timely notice of intention to appeal to this Court was served.
There is no question that claimant is now permanently and totally disabled, suffering from a mental condition diagnosed as paranoid schizophrenia, but defendants contend there is no competent evidence in the record which sustains the conclusion that there is a causal connection between claimants disability and the injuries he received when attacked by two prisoners as he performed his official duties as chain gang guard. The sole question, therefore, for determination is whether or not the record contains any competent evidence which would reasonably sustain the findings and conclusions of the Industrial Commission.
We have held in numerous cases and it is now well established that the burden is upon the claimant to prove such facts as will render his injury compensable within the provisions of the Workmen's Compensation Act, and such award must not be based on surmise, conjecture or speculation. Leonard v. Georgetown County et al., 230 S.C. 388, 95 S.E. (2d) 777; Brady v. Sacony, of St. Matthews, 232 S.C. 84, 101 S.E. (2d) 50; Walker v. City Motor Car Co., 232 S.C. 392, 102 S.E. (2d) 373; Glover v. Columbia Hospital of Richland County, 236 S.C. 410, 114 S.E. (2d) 565; Packer v. Corbett Canning Co., Inc., 238 S.C. 431, 120 S.E. (2d) 398.
It is also well settled that findings of fact are within the exclusive domain of the Industrial Commission and the Courts will not review such findings except to determine whether there is any competent evidence to support the award. The award may be reversed if there is an absence of any evidence to support it, but the Courts not being the trier of facts are not concerned with the weight to be given the testimony. 19 South Carolina Digest, Workmen's Compensation, 1939.
Dr. J.J. Cleckley, Chief of the Psychiatric Division of the Medical College of South Carolina, testified as follows:
*481 "Q. What is your opinion as to the cause of his mental condition?
"A. We made a diagnosis of schizophrenia, paranoid type. There is no valid explanation as to the cause of that illness. Some years ago we used to feel that perhaps it was due to some structural change in the brain; however, that has never been proven, brains of schizophrenia people are just like brains of other people from an architectural standpoint. Then for a period of time it was felt that it was from psychological origin due to particular childhood stress, that, too, has never been fully proven and now we are inclined to feel that it is probably a disease resulting from some chemical disturbance taking place in the brain, the nature of the chemical disturbance we do not know. So far it is a disease of unexplained etiology.
"Q. When you say that schizophrenia is a functional illness, that's been present a long time, building up in a person over a long period of time?
"A. Not necessarily; there can be acute forms of it that come on rather suddenly, but a person who is middle aged why when they develop we usually feel that there has been a long build up.
"Q. You feel that  do you have any opinion as to whether or not there is any relationship between his injury  history of injury as given to you and his present condition?
"A. I don't think there is any causal relationship. I don't think that brain injury causes schizophrenia; however, there is the possibility that  well, we know this, that a person who is predisposed to this disease, if they undergo severe emotional stress it can act as a precipitating or aggravating factor; but I do not think that injury causes this disease.

* * *
"Q. Could you say, Doctor, here if this assault as he gave you the history of being assaulted by the chain gang inmates, if that disturbed him emotionally could you say that could have precipated, or could have in any way aggravated this condition that he has, this schizophrenia condition?
*482 "A. I would say that's a possibility, yes, sir.
"Q. Possibility?
"A. Yes, sir.

* * *
"Q. But suppose that condition existed even up to the time you saw him some number of months later?
"A. If that were the case I would say it would be a possibility of precipitation.

* * *
"Q. Well my question was  I believe before there he said it was probable, but of course I put it to you hypothetically. From the history all this happened immediately after this accident he had a change in personality, was uncooperative and belligerent and confused, would you think in probability then that this accident may have contributed to it or precipitated it if it had happened right after the accident?
"A. Mr. Connor, I can't clearly answer that because I think it is more in the realm of possibility because we know that someone who has severe concussion that there can be very disturbed behaviour for several days after that which then subsequently clears. Now if we can go back and say well now this definitely was schizophrenia 
"Q. I believe I meant it to go all the way, and I also asked you if that continued on up until the time you saw him if it was probable, and I believe you said that it was probable if it continued up to the time you saw him.
"A. Yes, sir, I guess I'll have to go along with that."
Dr. Leo E. Kirven, Jr., Chief of the white male division of the State Hospital, with five years experience in Psychiatry, testified as follows:
"Q. Doctor, in your opinion could a trauma of the type as described in this case, could that trigger or accelerate or aggravate a pre-existing schizophrenic condition in a patient?
"A. It definitely could be a factor, yes, sir.
*483 "Q. It definitely could be a factor?
"A. Yes, sir.

* * * * *
"Q. And you have heard the testimony of Mr. Archie E. Kennedy on the stand this morning to the effect that there was a marked change in him after this accident as far as his nervousness was concerned and his mental reaction and his confusion?
"A. Yes, sir.
"Q. And that he had not had this condition beforehand and he had not been treated prior to this injury for any mental illness of any kind?
"A. Yes, sir.
"Q. That, along with your knowledge of schizophrenia, in your opinion is this injury that he had, the lick on the head and the subsequent emotional disturbance from that on September 9th, has that accelerated, aggravated or in any way made manifest or triggered this pre-existing condition? Based on that information, is that you opinion?
"A. Yes, sir. I would feel that this was the precipitating factor.
"Q. This was the precipitating factor?
"A. Yes, sir."
In this State the rule has been established that "when the testimony of medical experts is relied upon to establish causal connection between an accident and subsequent disability or death, in order to establish such, the opinion of the experts must be at least that the disability or death `most probably' resulted from the accidental injury." Cross v. Concrete Materials et al., 236 S.C. 440, 114 S.E. 828.
Examination of the medical testimony recited above convinces us that the "most probably" rule was met although other inferences inconsistent with the foregoing are present in the testimony. It is not our duty to weigh the testimony, but only to determine whether the *484 record contains competent evidence to support the findings of the Industrial Commission.
In addition to that pointed out above, the Industrial Commission had other evidence, circumstantial in nature, which tends to support their findings of a causal connection between claimant's disability and the injuries he received.
We have held that circumstantial evidence may be sufficient to support a finding of fact or an award in Workmen's Compensation cases. Circumstantial evidence has as much probative vauue in these type cases as in any other class of cases and in order to support an award need not reach such a degree of certainty as to exclude every reasonable or possible conclusion other than that reached by the Commission. It is sufficient if the facts or sequence of events proved give rise to a reasonable inference that there was a casual connection between claimant's disability and his prior injury. White v. Carolina Power & Light Co., 215 S.C. 25, 53 S.E. (2d) 872; Buff v. Columbia Baking Co., 215 S.C. 41, 53 S.E. (2d) 879; Grice v. Dickerson, Inc., 241 S.C. 225, 127 S.E. (2d) 722.
Claimant's wife and brother testified to the effect that prior to the beating received on September 9, 1958, claimant appeared to be perfectly healthy and normal, but that after receiving head injuries, claimant became restless, nervous and highly agitated, was uncooperative, mixed up and confused and on several occasions threatened his wife and children.
Where medical testimony is not relied upon solely to establish a causal connection between an accident and subsequent disability, the presence or absence of such medical testimony may be conclusive depending upon the particular facts and circumstances of the case. Baker v. Graniteville Co., 197 S.C. 21, 14 S.E. (2d) 367; Poston v. Southeastern Construction Co., 208 S.C. 35, 36 S.E. (2d) 858; Ballenger v. Southern Worsted Corporation, 209 S. *485 C. 463, 40 S.E. (2d) 681; Holly v. Spartan Grain & Mill Co., 210 S.C. 183, 42 S.E. (2d) 59; Woodson v. Kendall Mills, 213 S.C. 395, 49 S.E. (2d) 597; Buff v. Columbia Baking Co., 215 S.C. 41, 53 S.E. (2d) 879; Windham v. City of Florence, 221 S.C. 350, 70 S.E. (2d) 553; Grice v. Dickerson, Inc. 241 S.C. 225, 127 S.E. (2d) 722.
In instant case the medical testimony was not solely relied upon but rather in addition to such medical testimony the circumstances before and following the injury show that the conclusion of causal connection was not without competent evidentiary support and was not the result of conjecture, surmise and speculation.
For the foregoing reasons, we are of opinion that all exceptions should be dismissed and the judgment affirmed; and it is so ordered. Affirmed.
MOSS and LEWIS, JJ., concur.
BUSSEY and BRAILSFORD, JJ., concur in result.
BRAILSFORD, Justice (concurring).
The opinion of the Chief Justice soundly holds that the evidence, including the medical testimony, was sufficient to raise an issue of fact for the Commission. My concurrence is limited to the result because the opinion appears to rest upon the further ground that the lay testimony alone was sufficient to sustain a finding of causal connection between claimant's injuries and his subsequent mental condition. It is unnecessary for us to go so far and I would not do so.
BUSSEY, J., concurs.