In the Matter of the Injury to Bruce W. LaToush, an employee of Big Horn Coal Company.

BIG HORN COAL COMPANY, Appellant (Employer below),

v.

Bruce W. LaTOUSH, Appellee (Employee below).

No. 4100.

Supreme Court of Wyoming.

Oct. 24, 1972.

Richard M. Davis, Jr. of Burgess, Kennedy & Davis, Sheridan, for appellant.

James N. Wolfe, Sheridan, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

McINTYRE, Chief Justice.

Big Horn Coal Company, as employer, has appealed from a workmen's compensation award made to its employee, Bruce W. LaToush. The employee claims he suffered hernias while driving a bottom-dump Euclid for Big Horn. According to the workman's report, hernias were suffered on two different occasions—one on June 11, 1971 and one on December 17, 1971. La-Toush missed no work as a result of either incident until after he went to the doctor on January 10, 1972.

The employee's written report of accident was made January 11, 1972. On appeal, the company claims LaToush is barred from recovering compensation because he did not report any injury within twenty-four hours of the occurrence of the accident, as required by § 27–104, W.S.1957, C. 1967. The company also claims LaToush failed to prove each of the four requisites for claiming compensation in a hernia case, as set forth in § 27–84, W.S.1957, C. 1967. We are inclined to agree with the latter of these two claims and therefore will deal with it only.

In the case of In re Hardison, Wyo., 429 P.2d 320, 322, we said each of the four elements enumerated in § 27–84 must be

proved by the employee by more than a preponderance of the evidence. The statute requires the workman to *clearly prove* the enumerated matters. We emphasized in the *Hardison* opinion that the time of injury is particularly important in cases involving hernia.

With these considerations in mind, we apply § 27–84 to the present case. The pertinent provisions of the section, as far as this case is concerned, are these:

"1. That the hernia is of recent origin;

2. That its appearance was accompanied by pain;

3. That it was immediately preceded by some accidental strain suffered in the course of the employment;

4. That it did not exist prior to the date of the alleged injury."

The employee's theory of recovery in the instant case is that he suffered hernias on two separate occasions. He contends, while driving the Euclid for Big Horn on June 11, 1971, he hit a pile of shale and was severely jarred. Then on December 17, 1971, LaToush contends he hit a series of bumps. According to his testimony, he was sure something was wrong after the December 17 occurrence because he could not sleep that night.

LaToush did not see a doctor about his hernia until January 10, 1972. At that time he saw Dr. Batty and was diagnosed as having a direct inguinal hernia. Dr. Batty operated and repaired the hernia on February 2, 1972. Apparently LaToush told the doctor only about an occurrence on June 11, with no mention of an injury or occurrence on December 17. The following is an excerpt from the testimony of Dr. Batty concerning the date of injury:

"THE COURT: Doctor, you testified with regard to June 11th. Was there any indication upon your examination on January 10th that this injury or this hernia was of long standing, say, in June? You say nothing about December 17th.

"THE WITNESS: I have no record of December 17th, Judge.

"THE COURT: I see.

"THE WITNESS: I have a note here on my chart that Mr. LaToush told me he was injured June, '71, but we didn't get any exact date on there. I don't have the exact date that he was injured.

"THE COURT: The hernia that you discovered, would you say that this could have occurred at that time, or was it of more recent origin? Can you determine that?

"THE WITNESS: I can't determine that. I can only go on his history, on what he told me, that he was injured in June, and he saw me January 10th with this lump on the side, which was in the area where he was previously operated."

It is apparent from the record that La-Toush had only one hernia. It has not been claimed that a hernia was started by bumps received June 11 and then aggravated and made worse as a result of bumps received December 17. If that is what the employee means to claim, he has not made it clear.

The judgment of the trial court is based on a finding that injury occurred December 17, 1971. The doctor based his findings on a claim of injury on June 11, 1971; and appellee continues to assert, even on appeal, that he suffered injury on June 11.

■ Concerning the question of whether a hernia's appearance was accompanied by pain, as required by our hernia statute, the employee testified: "Well, in June I hit a big pile of shale and had a terrific stomach ache overnight on it and I didn't really pay much attention to it. I was sore all over from the beating I took and I just kind of forgot about it."

And referring to the December 17 incident, LaToush said: "That was on a Friday night and I told my immediate supervisor the following Monday that I had had a heck of a stomach ache out of it, but I didn't have any idea what the trouble was." The supervisor denied any recollection that LaToush made any mention of either the

June or December incidents until after he had gone to the doctor.

On the whole, testimony concerning pain seems hardly sufficient to satisfy the statutory requirement that the appearance of the hernia was accompanied by pain. As stated in Sligh v. Pacific Mills, 207 S.C. 316, 35 S.E.2d 713, 715:

> " 'The injury and the pain must be referable to a definite time, place, and circumstance, and, in accordance with the provisions of the Act, pain must accompany the accidental injury. Otherwise, how could the inception of the hernia be definitely fixed and accounted for. The office of this statutory requirement is to date the onset of the hernia. A requirement that pain accompany the rupture or protrusion would be of no effect in determining its cause, unless the rupture or hernia occurred instantaneously with the accidental injury. For if there is no pain indicative of an abdominal lesion at the time of the accident, as was the case here, and such is not required to be established, then it might well result that the cause of the hernia would be left in the field of surmise and conjecture.' " [1]

█ The hernia statute requires clear proof that the hernia is of recent origin. Here, LaToush seems to be claiming the real *origin* resulted from an occurrence on June 11, 1971, seven months before the workman's report of accident and claim for compensation. It would be difficult to say such proof meets the standard contemplated by the legislature when it enacted § 27–84.

█ In addition to requiring clear proof as to recent origin, the legislature has also required clear proof that a hernia was *immediately* preceded by some accidental strain. This suggests that a compensable hernia cannot ordinarily be a trivial injury

which remains in a state of latency for a period of seven months.[2]

We are rendering an opinion simultaneously with this opinion for the case of Big Horn Coal Company v. Wartensleben, Wyo., 502 P.2d 187. We are reaffirming in that case that an employee's report must be made as soon as the employee becomes aware that an accident has caused an injury; and the term "injury" as used in the compensation statutes means compensable injury. The legislature, however, has made the requirements for proving a compensable hernia much more limited and exacting. This includes the need for *clear proof* that the hernia was *immediately* preceded by some accidental strain. It is of course unclear in this case whether LaToush's hernia was caused by an accidental strain on June 11 or one on December 17, or neither or both.

Moreover, § 27–84 requires clear proof that the hernia did not exist prior to the alleged injury. We must consider December 17 as the date of the alleged injury because that is the only one found by the fact finder, the trial judge. The workman's own proof tends to show a hernia since June 11, 1971, which leaves unclear proof that no hernia existed prior to December 17, 1971. The doctor indicated the hernia he operated was through the old scar of a previously operated hernia, but appellant makes no point of this.

All will agree it is not for us to judge as to the wisdom of legislative enactments. No doubt the legislature had reasons for narrow requirements with respect to hernias. In any event, we can only follow the dictates of such legislation when dealing with hernias. This requires reversal of the order appealed from.

Reversed.

---

1. See also *Rudd v. Fairforest Finishing Co.*, 189 S.C. 188, 200 S.E. 727, 730; and 99 C.J.S. Workmen's Compensation § 185, p. 637.

2. See *Potter v. Midland Cooperatives, Inc.* (1956), 248 Minn. 380, 80 N.W.2d 59, 61.